## W. Mathis Declaration

1. My name is W. Mathis. I am 70 years old.
2. I am a veteran. I also used to work at the Department of Behavioral Health as a case manager.
3. I am on parole for an offense from 1984. I was released onto lifetime parole in 2006, and have been on parole ever since.
4. I have congestive heart failure.
5. I have been hospitalized four times since October of 2023 because of my congestive heart failure.
6. This disability makes it difficult to walk. I get dizzy and have shortness of breath often. I use a walker whenever I leave the house.
7. My parole supervision requires me to go to drug testing and visit my community supervision officer (CSO) twice per week.
8. Because it is difficult for me to walk and get around the city, I have a hard time keeping up with these frequent supervision appointments.
9. It is also difficult for me to manage my supervision appointments with the many medical appointments I have for my congestive heart failure.
10. For example, sometimes I have medical appointments on the same day I have to report to my CSO. It is hard for me to do both in one day, because it requires a lot of travel in the city, which is already difficult for me.
11. It is also difficult to manage because it is impossible to predict how long my supervision appointments will be. Sometimes when I show up my CSO is not available, and I have to wait in the lobby for an hour or longer.
12. My CSO knows about my congestive heart failure. I also gave my CSO a list of all of my appointments at the VA hospital and asked that my supervision meetings account for them. She never offered to change my appointment dates, and she has never offered to meet me at my home rather than require me to come into her office. She has also never offered to let me call-in instead of report in-person.
13. While I have been having these serious health problems, my supervision requirements have only gotten harder. Last December, after I had already been hospitalized twice for a total of 13 days for my congestive heart failure, my CSO added GPS monitoring to my requirements.
14. This increase in conditions was confusing to me because I had made it to almost all of my appointments in October and November, even though I was having so many health problems.
15. I told my CSO that my medical issues made the GPS monitor dangerous for my health. She made me put it on anyway. As soon as the GPS monitor was put on my ankle, my ankle started to swell up.
16. The GPS monitor made it even harder for me to walk. It felt like I was wearing leg irons when I tried to walk. It was really uncomfortable and painful, and it made my ankle swollen all of the time.

17. When my doctor at the VA hospital saw the GPS monitor on my ankle, he was upset and said I should not be wearing it.
18. I had the GPS monitor on for almost a month, until I was arrested by the Parole Commission for a technical parole violation in January 2024.
19. No one from CSOSA or the Commission has ever offered to change my conditions of parole because of my disability.
20. Nobody from the Commission or CSOSA has ever asked me if my disabilities would make it hard to follow supervision rules.
21. Nobody from the Commission or CSOSA has ever asked me if I need reasonable accommodations, or supports, in order to follow my supervision requirements.
22. Nobody from the Commission or CSOSA has ever told me that I have rights under Section 504 of the Rehabilitation Act, including the right to reasonable accommodations.
23. Even with all of these health problems, medical appointments, and weeks in the hospital, I have tried really hard to comply with all of my conditions of parole.
24. For example, on December 18, 2023, I passed out and was taken to the VA hospital. Despite this health scare, I called my CSO on that same day and let her know I was in the hospital.
25. Even though I try really hard, I still get punished by my CSO and the Commission.
26. On January 22, 2024, I was arrested by the Commission for technical violations of my parole conditions. Specifically, I was charged with missing drug testing appointments, appointments with my CSO, and testing positive for marijuana three times.
27. But on three of the four days I was accused of missing appointments with my CSO (December 11th, 14th, and 28th), I was at the VA hospital. At the hospital, I was on oxygen and really short of breath.
28. I also made sure to stay in contact with my CSO. I reported to supervision on December 29th, January 4th, and January 8th.
29. Then, I ended up back in the VA hospital from January 15th-19th, but reported to my supervision officer in-person the very next day on January 20th. I reported again on January 22nd.
30. When I got to my CSO's office on January 22nd, the Commission had me arrested me for not complying with my conditions of supervision. They told me my whereabouts were unknown, even though I had been reporting regularly and was wearing the GPS monitor that made my ankle swell up.
31. I was incarcerated for about ten days because of this.
32. This incarceration was really bad for my health.
33. I had an appointment scheduled for January 26, 2024, to get a defibrillator for my congestive heart failure placed at the VA hospital. My attorney told the Parole Commission about this appointment at my probable cause hearing on January 23rd.
34. The hearing examiner at the probable cause hearing agreed that I had a serious medical procedure and I should be released. He also agreed that I was not a loss of contact.
35. The Commission rejected the hearing examiner's recommendation and ordered that I stay in jail. I missed my appointment for my defibrillator.

36. I was not released until January 30th.
37. I was released to the same conditions of supervision that my disability made it hard to follow in the first place. The only difference is that I don't have to wear the GPS monitor. I still have a hard time getting around and I still have a lot of medical appointments.
38. Simple adjustments to my conditions would make it possible for me to comply, as I would like to do, without hurting my health. For example, the Commission could allow me to report by phone, schedule home visits in place of office visits, and require me to come in person less often.

I declare under penalty of perjury under the laws of the United States of America that foregoing is true and correct.

Executed on 3-19-24

W. Mathis