Declaration of Tamara Seltzer

1. My name is Tamara Seltzer. I am the Director of the DC Jail and Prison Advocacy Project at University Legal Services ("ULS").
2. In this role, I work with clients who have a wide range of mental health disabilities. I also have experience working with people who have physical and intellectual/developmental disabilities. I have worked with people who have been diagnosed with mental health and/or intellectual/developmental disabilities for over 30 years. I have also worked with, and supervised, mental health clinicians for the last 13 years.
3. I work with individuals who were formerly incarcerated and individuals on supervision.
4. I worked with K. Davis when he was most recently on supervision.
5. My impressions of Mr. Davis are based on my interactions with him as well as conversations with my former colleague Curtrice Scott, a clinician and licensed professional counselor, who shared her clinical observations of Mr. Davis with me.
6. When I first met Mr. Davis, I could tell that he was in pain. At that time, he was homeless and living in a shelter. I asked if something was wrong and he explained that he had suffered third-degree burns in a fire, which left him in serious pain.
7. Mr. Davis has needed multiple skin graft surgeries for his burns. He needs a third surgery, but has not been able to get it due to his incarceration.
8. Mr. Davis's burns make it difficult for him to move around the city. For example, he used to ride a bicycle to his supervision and medical appointments, but can no longer do so due to his burns. Now, he has to walk and take the bus. Walking is painful due to his burns, so getting to appointments takes a long time.
9. In addition, Mr. Davis has mental health conditions including anxiety, depression, and posttraumatic stress disorder ("PTSD").
10. As a result of these conditions, it is difficult for Mr. Davis to trust new people. He trusts me and my colleagues at ULS and would reach out to us when he experienced problems.
11. For example, in July 2023, Mr. Davis was released from jail to parole after a prior revocation. He was released into homelessness and did not even have a phone. ULS gave him a phone and, per our policy, was supposed to add minutes to the phone each month .
12. However, ULS inadvertently failed to add minutes to his phone. This was a very unfortunate oversight, especially because Mr. Davis was required to report to his Community Supervision Officer ("CSO") via phone as a condition of his parole.
13. Mr. Davis grew increasingly anxious and kept contacting Ms. Scott at ULS for help getting minutes added to his phone.

14. Mr. Davis's actions are consistent with his mental health conditions. For example, given his PTSD and anxiety, trying new things or talking to new people is difficult. He returns to what he knows, which for him is getting support from ULS. As a result, he repeatedly, consistently, and frantically tried to contact Ms. Scott at ULS to get minutes added to his phone. Given his mental health conditions, I do not believe he felt capable of asking anyone else, such as his CSO, for help.

15. His intense focus on having ULS add minutes to his phone also reflects "tunnel vision" from his anxiety. The more anxious an individual like Mr. Davis gets, the more tunnel vision they can get. Anxiety is not conducive to creative brainstorming or problem-solving. Rather than pivot to another solution, Mr. Davis kept trying to do the same thing more intensely.

16. Further, Mr. Davis is a hard worker, but his depression can make him feel defeated, and make him want to give up.

17. To me, the fact that, despite the impact of his depression, Mr. Davis avidly continued contacting ULS to fix his phone issue—and made it to all his required drug-testing appointments twice a week—shows just how hard he tried to overcome his disability-related obstacles and succeed on parole.

18. Less than a month after his release from jail, Mr. Davis was arrested and accused of violating his parole by failing to report to his CSO via phone.

19. I testified at Mr. Davis's revocation hearing and explained how ULS inadvertently failed to put the minutes on his phone that would have allowed him to report as required, and how Mr. Davis tried his hardest to follow his supervision rules.

20. In order to succeed when he is released back onto parole, Mr. Davis needs reasonable accommodations to his supervision conditions.

I declare under penalty of perjury under the laws of the United States of America that the above statement is true and correct.

Executed on _April 24, 2024_____

_____
Tamara Seltzer