**EXHIBIT A**



OFFICE OF GENERAL COUNSEL

June 23, 2023

*Sent via email*

Ashika Verriest, Esq.
Staff Attorney
American Civil Liberties Union
915 15th Street, N.W.
Washington, DC  20005

Re:  Freedom of Information Act (FOIA) – 23 – FOIA –00203

Dear Ashika Verriest:

This is in response to your Freedom of Information Act (FOIA) request to Court Services and Offender Supervision Agency (CSOSA).  In your FOIA request you requested the following:

### A.      Policies and procedures

All documents containing policies, procedures, guidelines, or any other rules or instructions, which have controlling effect over CSOSA as of May 31, 2023, and which concern:

1. Providing people on parole or supervised release with notice of their rights under Section 504 of the Rehabilitation Act;
2. Evaluating whether people on parole or supervised release have disabilities, including but not limited to information to be collected about disability during the AUTO screen process;
3. Evaluating whether people on parole or supervised release need reasonable accommodations
4. Providing people on parole or supervised release reasonable accommodations;
5. Evaluating whether people on parole or supervised release should be placed in the "Mental Health Supervision Unit";
6. Any processes or procedures for people with disabilities to request reasonable accommodations as to their conditions of parole or supervised release;
7. Any procedures or processes for people with disabilities to request that their conditions of supervision be modified;
8. Guidelines for supervising people with disabilities on general supervision and/or in the "Mental Health Supervision Unit";
9. The currently operative CSOSA Operations Services Manual; and
10. The categories of documents the agency normally receives for each person entering parole or supervised release, including but not limited to: Department of Corrections

medical records; history of hospitalizations for mental and/or physical health issues; pre-sentence investigation report.

B.   **Data on people with disabilities**

All reports, lists, statistical summaries, or other compilations of data, from **May 31, 2022,** to the present, reflecting:

1. The total number of people with disabilities supervised by the agency;
    a. Any breakdowns by type of disability (e.g., (1) mental disability, (2) intellectual disability, (3) developmental disability, (4) physical disability) of the total number of people with disabilities supervised by the agency;
2. The total number of Alleged Violation Reports ("AVRs") filed for solely technical violations ("technical AVRs"); and
3. Any breakdowns of the number of technical AVRs by whether the person issued the AVR had a disability or specific types of disabilities (e.g., (1) mental disability, (2) intellectual disability, (3) developmental disability, (4) physical disability).

Your request was processed in accordance with the FOIA, 5 U.S.C. § 552.

A comprehensive search was conducted in CSOSA's Office of Community Supervision & Intervention Services (OCSIS) and the Office of Research and Evaluation (ORE).

A.   **Policies and procedures**

- **Response 1**: An exhaustive search of all guidance, dating back to 2015, yielded no guidance/instruction/etc. regarding the provision of notice to supervisees.

- **Response 2**: SMART's "Physical Information" screen allows documentation of supervisee disability, to include open text for explanation and how the disability is being addressed. The Auto Screener within SMART contains a "Mental State and Condition" section that is completed by staff to document the supervisee's past and present mental conditions.

- **Response 3**: An exhaustive search of all guidance, dating back to 2015, yielded no guidance/instruction/etc. regarding the provision of notice to supervisees.

- **Response 4**: An exhaustive search of all guidance, dating back to 2015, yielded no guidance/instruction/etc. regarding the provision of notice to supervisees.

- **Response 5**: OCSIS Case Assignments and Transfers Guidance (csosa.gov), pp 8, 21-23, provides the controlling guidance for placement in Behavioral Health Supervision.

- **Response 6**: An exhaustive search of all guidance, dating back to 2015, yielded no guidance/instruction/etc. regarding reasonable accommodation for supervisees.

- **Response 7**: Guidance TO OFFENDERS (csosa.gov) p 11 indicates the supervisee's responsibility regarding requests for modification of supervision conditions as follows: "Consult with the CSO to request approval for transferring community supervision to another jurisdiction or to request a change in conditions of community supervision;"

- **Response 8**: There are no guidelines differentiating supervisees by disability or lack thereof.

- **Response 9**: CSOSA Community Supervision Services Operations Manual, additionally, please also see OCSIS policies posted online, PS 3100 Community Supervision Philosophy - Recertification 11.12.2021 (002).pdf (csosa.gov), 4007_release_of_drug_tests_results.pdf (csosa.gov), A critical factor in CSOSA's success in reducing the crime rate is its ability to introduce an accountability structure int..., and Offender DNA Sample Collection, Policy Statement 4002 (csosa.gov).

- **Response 10**:

    - For D.C. Code offenders releasing on parole or supervised release, the Pre-sentence Investigation is internally available and part of the digital file.
    - For parole and supervised release offenders, the Bureau of Prisons' SENTRY database provides information necessary for re-entry needs. Officers responsible for preparing pre-release investigations in the TIPS unit access SENTRY information, to include:
        - Computation of sentence and supporting information;
        - Information concerning pending charges, and wanted status, including warrants;
        - Information relating to notification to other federal and non-federal law enforcement agencies prior to the inmate's release;
        - Records of the allowance, forfeiture, withholding and restoration of good time;
        - Information concerning present offense, prior criminal background, sentence and parole;
        - Identification data including, but not limited to, the following:
        - Name,
        - Date of birth,
        - Social Security number,
        - Inmate register number (also known as Federal Register Number),
        - FBI number,
        - District of Columbia Department of Correction (DCDOC) Number,
        - Immigration and Customs Enforcement (formerly Immigration and Naturalization Service) Number,

- Driver's license (if available),
- Home address,
- Physical description,
- Sex,
- Race,
- Religious preference,
- Photographs,
- Digital image, and
- Drug testing and DNA samples, test results, and analysis records;
- Institution designation and housing assignments, including separation orders, and supporting information;
- Work and payroll records;
- Program selections, assignments, skills assessments, and performance or progress reports;
- Prison conduct records, including information concerning disciplinary actions and reviews, and participation in escapes, assaults, and disturbances;
- Economic, social, and religious background, including special religious dietary requirements;
- Educational data, including industrial and vocational training;
- Physical and mental health data;
- United States Parole Commission orders, actions and related information;
- Transfer information, including dates and destinations;
- Release processing information;
- Referrals of non-federal inmates to Bureau custody and/or referrals of Bureau inmates to state custody.

The Bureau of Prisons prepares some of the above-referenced information into an Inmate Report[1] that is received by the Agency as part of the Release Plan.

B. **Data on people with disabilities**

- **Response 1, 2, and 3**: See the enclosed document prepared by ORE, 1 page, fully releasable.

While no records have been withheld or denied, you have a right to appeal the adequacy of our search.  By filing an appeal, you preserve your rights under the FOIA and give the agency a chance to review and reconsider your request and the agency's decision.  The FOIA provides at 5 U.S.C. § 552(a)(6)(A)(i) (2014) amended by FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 that if a FOIA request is denied in whole or in part by the FOIA Officer, the

---

[1] CSOSA assumes no responsibility for any error or outdated information pertaining to the policies of BOP.  You may wish to contact the BOP for their policies and procedures.

requester may file a written appeal within 90 days from the date of the denial or, if later (in the case of a partial denial), 90 days from the date the requester receives the disclosed material. Your appeal shall be addressed to the General Counsel, Court Services and Offender Supervision Agency, 800 North Capitol Street, N.W., Seventh Floor, Suite 7200, Washington, DC 20002 and must be clearly marked "Freedom of Information Act Appeal."

If you would like to discuss our response <u>before</u> filing an appeal to attempt to resolve any dispute without going through the appeals process, please contact Jeanean West at (202) 220-5748 or by email at jeanean.west@csosa.gov.  In the alternative, you may also contact Willis Stamps, Supervisory Attorney Advisor, and CSOSA FOIA Public Liaison for further assistance and to discuss any aspect of your request.  Mr. Stamps can be reached by telephone at (202) 220-5468 or by email: Willis.Stamps@csosa.gov.

You also have the option to contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov  or call toll free at 1-877-684-6448; or facsimile at 202-741-5769.

This is our final response and completes the processing of your request. There were no fees associated with the processing of your request. You may submit future requests by accessing https://www.foia.gov.

Sincerely,

*Jeanean West*

Jeanean West
FOIA Officer
Office of the General Counsel

Enclosure(s)

In response to item B of the FOIA request, we constructed a cohort of 2,816 offenders actively supervised by CSOSA on parole or supervised release matters between June 1, 2022 and May 31, 2023. This cohort consisted of both DC Code violators and persons transferred to CSOSA's supervision under the Interstate Compact.

We identified offenders with a "mental disability" using a scale composed of six yes-or-no questions related to mental health from the agency's risk screening instrument:

1. In the past month, did you seek mental health counseling?
2. In the past month, were you evaluated for or diagnosed with a mental disorder?
3. In the past six months, have you received treatment for a mental condition?
4. Are you currently taking or have you been prescribed medication for emotional problems?
5. Have you ever been treated and/or hospitalized for a psychiatric condition?
6. Do you have a special condition for mental health?

We assigned points to each question based on affirmative answers to reflect the severity of the disability or condition. We assigned one (1) point for affirmative answers to questions 1 and 2, two (2) points for questions 3 and 4, and three (3) points for questions 5 and 6. By summing the points from these questions, we calculated a mental disability score for each offender assessed between January 1, 2022, and May 31, 2023. Offenders whose score was greater than or equal to 5 were categorized as having a "mental disability."  Of the 2,816 offenders in the cohort, 484 (17%) met this definition of "mental disability" (see Table 1).

Table 1. Offenders supervised June 2022 - May 2023, by mental health status and whether an AVR was submitted against them exclusively for technical violations

| Offender has mental disorder | AVR submitted for technical violation | | |
|---|---|---|---|
| | Yes | No | Total |
| Yes | 88 | 396 | 484 |
| No | 205 | 2,127 | 2,332 |
| **Total Offenders** | 293 | 2,523 | 2,816 |

Next, we examined the number of alleged violation reports (AVRs) exclusively for technical violations that were sent to release authorities for offenders in the cohort.  During the cohort period, 375 AVRs for technical violations were submitted, and 122 (33%) of them were sent against offenders with a "mental disability" (see Table 2). However, since many of the offenders in the cohort received multiple AVRs, the proportions change if we count offenders rather than AVRs. Of the 2,816 offenders in the cohort, 293 (10%) had an AVR sent against them for technical violations alone (see Table 1). In contrast, of the 484 offenders in the cohort with a "mental disability," 88 (18%) had an AVR sent against them exclusively for technical violations.

Table 2. Alleged Violaton Reports (AVRs) submitted exclusively for technical violations by the mental health status of the offender, June 2022 - May 2023 cohort

| Offender has mental disorder | AVR submitted for technical violation | |
|---|---|---|
| | n | % |
| Yes | 122 | 33% |
| No | 253 | 67% |
| **Total AVRs** | **375** | **100%** |

It is important to note that we did not impose any time-ordering constraints on the risk screening in relation to any AVRs that may have been sent against the offenders. Additionally, our definition of "mental disability" is simplistic and assumes these disorders are time-invariant. Specifically, if multiple risk screening instruments were completed on an offender between January 2022 and May 2023, we considered them to have a "mental disability" if their score exceeded the threshold value on *any* of the screeners. This means that an AVR was counted as being sent against an offender with a "mental disability" even if the AVR was submitted *before* the completion of the risk screener that showed evidence of the "mental disability." Since the timing of risk screenings and AVR submissions are substantially independent, this may overestimate the number of offenders counted as having a "mental disability."

Please note that we lack records that are responsive to the components of item B related to offenders with intellectual, developmental, or physical disabilities.