UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| W. MATHIS, et al.,<br><br>              Plaintiffs,<br><br>      v.<br><br>UNITED STATES PAROLE COMMISSION, et al.,<br><br>              Defendants. | Civil Action No. 24-1312 (TNM) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

BACKGROUND............................................................................................................1

LEGAL STANDARD ................................................................................................1

ARGUMENT..............................................................................................................2

     I.      Plaintiffs Are Not Likely to Succeed on the Merits of Their Complaint...............2

          A.      There Is No Cause of Action Under Section 504 ......................................3

          B.      Plaintiffs' Parole Revocations Were Not Due to Their Disabilities...........8

     II.     Plaintiffs Have Not Shown an Irreparable Harm....................................................9

     III.    The Balance of Equities Weighs Against an Injunction.......................................12

CONCLUSION..........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Bush*, 945 F. Supp. 2d 64 (D.D.C. 2013) .................................................. 13

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .............................................................. 5

*Apotex, Inc. v. FDA*, 449 F.3d 1249 (D.C. Cir. 2006) .................................................. 3

*Archdiocese of Wash. v. Wash. Metro Area Transit Auth.*,
   897 F.3d 314 (D.C. Cir. 2018) .................................................................................. 12

*Ark. Dairy Co-op Ass'n, Inc. v. Dep't of Agric.*, 573 F.3d 815 (D.C. Cir. 2009) ......... 3

*Bannister v. U.S. Parole Comm'n*, Civ. A. No. 18-1397 (APM),
   2019 WL 1330636 (D.D.C. Mar. 25, 2019) ........................................................... 5, 7

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................... 7

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) ................................................... 13

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ............... 1, 10

*City of Las Vegas v. Lujan*, 891 F.2d 927 (D.C. Cir. 1989) .......................................... 3

*CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) ........... 3

*Clark v. Skinner*, 937 F.2d 123 (4th Cir. 1991) ........................................................... 6

*Cousins v. Dep't of Transp.*, 880 F. 2d 603 (1st Cir. 1989) (en banc) ......................... 6

*Davis v. Billington*, 76 F. Supp. 3d 59 (D.D.C. 2014) ................................................ 13

*Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ...................... 1, 2

*Egbert v. Boule*, 596 U.S. 482 (2022) .......................................................................... 5

*Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641 (RMU),
   2008 WL 9356287 (D.D.C. Apr. 18, 2008) ............................................................ 13

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................. 11

*J.L. v. Soc. Sec. Admin.*, 971 F.2d 260 (9th Cir. 1992) ................................................ 6

*Jesner v. Arab Bank, PLC*, 548 U.S. 241 (2018) ..................................................... 4, 5

*Lane v. Pena*, 518 U.S. 187, 195 (1996) ................................................................. 3, 6

*Moya v. Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020) ................................... 6

*Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45 (D.D.C. 2020) ..................... 2, 4

*O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) ................................................. 11

*Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99 (D.D.C. 2015) .................... 4, 5, 6

*Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205 (D.C. Cir. 1989) ........................ 10

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ..................................... 2, 12

*Sierra Club v. Johnson*, 374 F. Supp. 2d 30 (D.D.C. 2005) ................................. 13

*Singh v. Carter*, 185 F. Supp. 3d 11 (D.C. Cir. 2016) ...................................... 2

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ............................................. 5

*Standing Rock Sioux Tribe v. Army Corps of Eng'rs*,
    205 F. Supp. 3d 4 (D.D.C. 2016) ...................................................... 2

*Standing Rock Sioux Tribe v. Army Corps of Eng'rs*,
    540 F. Supp. 3d 45 (D.D.C. 2021) .................................................... 11

*Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81 (D.D.C. 2021) ............. 13

*Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002) ........................................... 8

*TikTok Inc. v. Trump*, 507 F. Supp. 3d 92 (D.D.C. 2020) ................................... 12

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ...................................... 5

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) .......................... 5

*Turner v. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020) .................... 12

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .......................................... 12

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) .................................... 2, 9

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ................................ 10

*Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1985) .............................................. 13

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .................................................... 5

**Statutes**

18 U.S.C. § 4203(b)(3) ................................................................................................. 6

18 U.S.C. § 4207(5) ...................................................................................................... 7

18 U.S.C. § 4209 ........................................................................................................... 7

18 U.S.C. § 4215(a) ...................................................................................................... 7

18 U.S.C. § 4218(d) ...................................................................................................... 6

29 U.S.C. § 791 ......................................................................................................... 3, 4

29 U.S.C. § 794(a) ............................................................................................... passim

29 U.S.C. § 794a ....................................................................................................... 4, 5

**Regulations**

28 C.F.R. § 2.19(a)(5) .................................................................................................. 7

28 C.F.R. § 2.26 ........................................................................................................... 8

28 C.F.R. § 2.83(e) ..................................................................................................... 13

29 C.F.R. § 2.77 ......................................................................................................... 13

Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction ("Mem.," ECF No. 3-1), fails to satisfy the standard to obtain a preliminary injunction. This Court accordingly should deny their Motion.

## BACKGROUND

Plaintiffs,[1] two individuals with a lifetime parole term in the District of Columbia, bring claims against the United States Parole Commission (the "Commission") and the Court Services and Offender Supervision Agency ("CSOSA") for alleged violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). *See generally* Compl. (ECF No. 1). Specifically, Plaintiffs allege that Defendants did not provide reasonable accommodations for their disabilities, which affected their ability to comply with the terms of their supervised release, including attending mandatory supervision appointments. They have additionally sought a preliminary injunction against the Commission, seeking an order to force Defendants to "implement a system to affirmatively assess" the reasonable accommodations Plaintiffs and others require. Mem. at 3.

## LEGAL STANDARD

On a motion for a preliminary injunction, a district court balances four factors: "(1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the nonmovant, and (4) public interest." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The Supreme Court has further held that at least

---

[1]      Plaintiffs' Complaint violates the Local Rules as it fails to include Plaintiffs' full names, using initials for Plaintiffs' first names without leave of Court. *See* LCvR 5.1(c)(1) (requiring names of parties in caption); LCvR 5.1(h) (procedures for requesting leave of court to file sealed papers, including motions to proceed under a pseudonym).

the second factor—irreparable harm—must be likely and "not just a possibility." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

Historically, the D.C. Circuit evaluated the four factors on a "sliding scale" and balanced them against each other, such that a strong showing on one factor could overcome weaker showings on other factors. *Davis*, 571 F.3d at 1291-92. Since the Supreme Court's decision in *Winter*, however, the D.C. Circuit implied—without deciding—that each of the factors was now an "independent, free-standing requirement." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (Kavanaugh, J., concurring); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16-17 (D.C. Cir. 2016) (sliding scale approach is "highly questionable" and a plaintiff "bears the burden of persuasion on all four preliminary injunction factors"). At the very least, the first two factors carry the most weight, and where a plaintiff can show "neither harm nor success, no relief is warranted." *Nat'l Ass'n of the Deaf ("NAD") v. Trump*, 486 F. Supp. 3d 45, 51 (D.D.C. 2020) (citing *Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016)).

## ARGUMENT

Plaintiffs here have not met any of the four required showings for provisional injunctive relief, and this Court should therefore deny their motion for a preliminary injunction. They are unlikely to succeed on the merits, both because there is no cause of action under Section 504 and because they have failed to state a claim. They have failed to show an irreparable harm that is more than merely speculative. And in attempting to impose a new status quo on the government through an injunction, the balance of equities tips against them.

## I.     Plaintiffs Are Not Likely to Succeed on the Merits of Their Complaint

The first factor in determining the appropriateness of a preliminary injunction is whether the movant has shown "a substantial likelihood of success on the merits" of their underlying complaint. *Davis*, 571 F.3d at 1291-92; *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*,

58 F.3d 738, 746 (D.C. Cir. 1995). Where the plaintiff is unable to meet that standard and fails to demonstrate a sufficient likelihood of success, denial of the injunction is appropriate, regardless of the other factors' weight. *See, e.g.*, *Ark. Dairy Co-op Ass'n, Inc. v. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009); *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006); *City of Las Vegas v. Lujan*, 891 F.2d 927, 935 (D.C. Cir. 1989).

Here, Plaintiffs have failed to state a claim for relief under the Rehabilitation Act, and they cannot therefore establish such a likelihood. Specifically, there is no cause of action for injunctive relief under Section 504, and the parole revocations Plaintiffs faced were not due to their disabilities.

## A.      There Is No Cause of Action Under Section 504

In their Complaint (ECF No. 1), Plaintiffs seek only declaratory and injunctive relief, requesting that this Court order Defendants to implement systems and regulations to address and correct the allegedly discriminatory supervision system currently in place. Compl. at 33-34. This is relief, however, that is unavailable under the Rehabilitation Act. Plaintiffs therefore cannot succeed on their claims. By extension, they cannot establish a likelihood of success sufficient to warrant a preliminary injunction.

The Rehabilitation Act prohibits discrimination (1) by federal agencies in their capacity as employers, 29 U.S.C. § 791; (2) by recipients of federal funds and federal agencies in their capacity as funders, 29 U.S.C. § 794(a); and (3) by federal agencies in their capacity as the operators of their own "program[s] or activit[ies]," 29 U.S.C. § 794(a). It is this last prohibition, established in Section 504 of the Rehabilitation Act, which is at issue in this case.[2]

---

[2]      Plaintiffs are not federal employees, and Defendants do not provide financial assistance to or fund their own actions in operating supervised release; the first two prohibitions are therefore not at issue and are unavailable to Plaintiffs. *See Lane v. Pena*, 518 U.S. 187, 195 (1996) ("The

In a subsequent amendment in 1978, Congress added Section 505 of the Rehabilitation Act, expressly setting forth the remedies available to individuals who sought to bring claims under the Rehabilitation Act.  Thus, federal employees pursuing claims under the first prohibition (29 U.S.C. § 791) could rely on "the remedies, procedures, and rights set forth in" Title VII's comprehensive scheme.  *See* 29 U.S.C. § 794a(a)(1).  Similarly, individuals pursuing claims under the second prohibition against agencies as funders could rely on "the remedies, procedures, and rights set forth in Title VI" in seeking relief.  *See* 29 U.S.C. § 794a(a)(2).  But Congress passed no corresponding amendment providing a cause of action for the third prohibition, and it thus did not establish any private right of action under the Rehabilitation Act for claims against agencies administering their own programs.  *See generally* 29 U.S.C. § 794a.  That omission, in light of the Supreme Court's guidance regarding implied private rights of action, *see, e.g.*, *Jesner v. Arab Bank, PLC*, 548 U.S. 241, 265-66 (2018), and taken in conjunction with Congress's clearly established creation of express remedies for the other two prohibitions, strongly suggests that no private right of action exists.

The D.C. Circuit has not yet had occasion to resolve this issue, and Defendants further recognize that courts in this district are split on the question.  *Compare NAD*, 486 F. Supp. 3d at 55-56 (Boasberg, J.) (finding an implied private right of action against federal programs under Section 504), *with Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 113 (D.D.C. 2015) (Moss, J.) (concluding that any cause of action "for a substantive claim of disability discrimination in a federal program . . . arises under the" Administrative Procedures Act, not the Rehabilitation Act), *and Bannister v. U.S. Parole Comm'n*, Civ. A. No. 18-1397 (APM), 2019 WL 1330636, *6

---

Department of Transportation . . . is not a 'Federal provider' of financial assistance with respect to the Merchant Marine Academy, which the Department itself administers.").

(D.D.C. Mar. 25, 2019) (concluding that any putative private cause of action against an agency arises under the APA, not the Rehabilitation Act). This Court should follow *Sai* and *Bannister*, as well as the weight of authority from other circuits and the mode of analysis set forth by the Supreme Court, and conclude that there is no implied right of action to sue a federal agency in its capacity as an operator of a federal program or activity under the Rehabilitation Act.

The Supreme Court has clarified that "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The judicial task is "limited solely to determining whether Congress intended to create the private right of action asserted." *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Id.* The Supreme Court has more "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Jesner*, 584 U.S. at 264 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004)); *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("At bottom, creating a cause of action is a legislative endeavor.").

In this case, Congress's 1978 amendments to the Rehabilitation Act included the creation of express causes of action in Section 505, but only for two of the three prohibitions described above. *See* 29 U.S.C. § 794a(a). In other words, Congress has provided contemporaneous and related evidence that it knew how to create private rights of action under the Rehabilitation Act, while simultaneously limiting the extent to which it was creating those rights. And it is "an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Reading the Rehabilitation Act as a whole,

Congress provided Section 504 would apply to non-funding activities of the federal government, and that agencies would need to promulgate regulations to provide for compliance with the Rehabilitation Act, but it also did not create a separate right of action to pursue such claims under the Rehabilitation Act, despite doing so for other classes of claims under the Act.  It therefore follows that Congress intended such challenges to be brought through the administrative pathway. *See Sai*, 149 F. Supp. 3d at 114 (when Congress "intends to permit only declaratory and injunctive relief, there will often be no need to provide for a cause of action that is independent of the APA."); *see also Lane*, 518 U.S. at 192-93 (interpreting Section 505 and observing that "Congress did not intend to treat all § 504(a) defendants alike with regard to remedies").

This approach is supported by the weight of authority from other circuits, which also holds that there is no implied private right of action under Section 504 for federal programs and activities. Three circuits have adopted this view, including an en banc opinion from the First Circuit authored by then-Judge Breyer.  *See Moya v. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020); *Clark v. Skinner*, 937 F.2d 123, 126 (4th Cir. 1991); *Cousins v. Dep't of Transp.*, 880 F. 2d 603, 610 (1st Cir. 1989) (en banc).  Only the Ninth Circuit has held otherwise, in a decision that pre-dates the Supreme Court's analysis in *Lane*.  *See J.L. v. Soc. Sec. Admin.*, 971 F.2d 260, 268 (9th Cir. 1992).  At heart, Plaintiffs seek review of agency action and an injunction requiring regulatory changes.  The APA, not the Rehabilitation Act, provides the avenue for such claims.

And here, any APA claim would obviously fail because, among other reasons, the Commission's imposition of parole conditions is a decision committed to agency discretion as a matter of law.  *See* 18 U.S.C. § 4203(b)(3) (1976) (authority for imposing conditions); 18 U.S.C. § 4218(d) (1976) ("Actions of the Commission pursuant to paragraphs (1), (2), and (3) of section

4203(b) shall be considered actions committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code.").

Moreover, even if certain limited review were available under the APA or habeas, Plaintiffs fail to allege that the Commission issued a final agency action on any requests for, or self-initiated evaluations of, accommodations for Plaintiffs. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (To constitute final agency action, two conditions must be met: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow. (cleaned up)).

Indeed, wholly absent from Plaintiffs' filings is any suggestion that they requested the Commission consider, or reconsider, their alleged disabilities in determining conditions for their release from confinement.  *See Bannister*, 2019 WL 1330636, at *5 (describing processes the Commission uses for assessing alleged disabilities in making parole determinations; citing 18 U.S.C. § 4207(5) (1976) (directing Commission in making parole determinations to "consider, if available and relevant . . . reports of physical, mental, or psychiatric examination of the offender"), and 28 C.F.R. § 2.19(a)(5) (same)); 28 C.F.R. § 2.19(b)(1) (noting the Commission also takes into account when making parole determinations "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available" and "encourage[ing] the submission of relevant information concerning an eligible prisoner by interested persons").  Also absent is any discussion of pursuing review of any Commission-imposed condition of release, for example, to the National Appeals Board, which issues final decisions on parole matters, or a request for reconsideration of the decision.  18 U.S.C. § 4209 (1976) (statutory provisions governing imposition of conditions); 18 U.S.C. § 4215(a) (providing for administrative appeals of "parole conditions are imposed or modified under section

4209"); 28 C.F.R. § 2.26 (National Appeals Board procedures); *id*. § 2.26(c) (National Appeals Board decisions are "final").

In short, Plaintiffs' Complaint seeks relief unavailable to Plaintiffs, and they are unlikely to succeed on the merits of their claims. By extension, they have failed to establish the required likelihood of success that would support a preliminary injunction.

### B.    Plaintiffs' Parole Revocations Were Not Due to Their Disabilities

Plaintiffs have also failed to state a claim because they have not alleged that they were denied the benefits of supervisory release "solely by reason" of their disabilities as Section 504 requires. 29 U.S.C. § 794(a). As the Ninth Circuit has held, the Rehabilitation Act therefore means only that an agency "may not categorically exclude a class of disabled people . . . because of their disabilities." *Thompson v. Davis*, 295 F.3d 890, 898, n.4 (9th Cir. 2002).

Plaintiffs have not alleged any such categorical exclusion. Rather, both Mathis and Davis admit that they failed to meet multiple obligations of their supervisory release. Mem. at 10-13. They attempt to excuse these failures by alleging that the only reason their failures occurred is because of an underlying disability, but that is a far cry from alleging that Defendants discriminated against the Plaintiffs because of their disabilities. Indeed, the fact that Mathis and Davis suffer different disabilities and allege different reasons for not making supervision appointments essentially means that they are alleging that a difficulty to attend supervision appointments is itself a disability that requires accommodation.

Plaintiff Mathis allegedly "provided his [Community Supervision Officer] with a list of his VA hospital appointments and asked that his meetings be scheduled around them[.]" Mem. at 10. But having hospital appointments is not, in and of itself, a disability; Mathis does not make any allegation or argument that he requested a change to his supervisory obligations because his health conditions made it difficult to attend them. More importantly, Mathis's most recent parole

revocation was premised on missed drug testing appointments and testing positive for marijuana. Compl. ¶ 88. In other words, his parole violations are not alleged to be solely the result of his disability. Instead, he admits that he failed to satisfy his supervisory obligations. He has failed to state a claim under Section 504.

Davis claims that he has chronic pain and requires assistance to move around, which makes it difficult to attend supervision appointments. Mem. at 11-12. He does not, however, allege that that difficulty is the reason for his parole revocation, or for his missed supervision appointments. Instead, he admits that he was already permitted to attend supervision appointments by phone, and he further alleges that he regularly made it to his required drug testing appointments. Compl. ¶¶ 108-111. He alleges that he sought assistance from University Legal Services but admits that the reason he failed to attend his telephone supervision appointments was because he did not have a phone, not because of any disability-related reason. Compl. ¶ 109. There are no allegations that connect Davis's lack of a phone to his disability, and he admits that he committed the violations of his parole requirements that led to his present incarceration. In other words, he has failed to state a claim that his incarceration occurred "solely" as a result of his disability.

The simple facts—as Plaintiffs themselves concede—are that Mathis and Davis faced consequences for not attending their required supervision appointments. They therefore have not alleged that their disabilities were the sole reason they were denied the benefits of supervisory release. They accordingly have failed to state a claim under Section 504 and, by extension, they have failed to establish a likelihood of success warranting a preliminary injunction.

## II.    Plaintiffs Have Not Shown an Irreparable Harm

The second element of the preliminary injunction analysis is whether a plaintiff can "demonstrate that irreparable injury is likely in the absence of an injunction" and not merely a "possibility." *Winter*, 555 U.S. at 21-22. In many ways, this element is the most important as "the

basis of injunctive relief [has] always been irreparable harm." *Chaplaincy*, 454 F.3d at 297 (internal quotation marks omitted). The injury must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*. The injury must also be "both certain and great; it must be actual and not theoretical." *Id.* (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). A movant who fails to establish irreparable harm is therefore ineligible for a preliminary injunction, even if the other three factors favor an injunction. *Id*. (citing *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210-11 (D.C. Cir. 1989)). Here, Plaintiffs have failed to establish such irreparable harm because neither is at risk for reincarceration.

The ultimate harm on which Plaintiffs rely in support of their Motion is their claim that, without an injunction, they face "an increased risk of arrest, incarceration, and prolonged supervision" by failing to appear for mandatory supervision appointments. Mem. at 24-25. Neither Plaintiff, however, is actually facing such a harm.

First, Davis is currently incarcerated, having already violated the terms and conditions of his parole. Compl. ¶ 95 (ECF No. 1). Additionally, Davis's sentence carries a lifetime parole term. Compl. ¶ 96. Regardless of the circumstances surrounding that parole violation, the fact remains that he is not currently on supervised release. Any putative preliminary injunction would therefore have no effect at all on Davis's risk of arrest and incarceration due to missed supervision appointments as he is already incarcerated and not appearing for supervision appointments. It would also have no effect on prolonging his supervision term as he is already on a lifetime parole term. And the possibility that he might, in the future, be on supervised release and then run the risk of a missed appointment "is far too speculative to warrant preliminary injunctive relief." *See Chaplaincy*, 454 F.3d at 298. Preliminary injunctions should not be issued simply to prevent the

possibility of some remote future injury.  *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (deeming the possibility of future criminal prosecution to be too speculative to warrant injunction); *Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 540 F. Supp. 3d 45, 57 (D.D.C. 2021) (possibility of future oil spill harming drinking water too speculative to warrant injunction).

Second, Mathis is not currently facing revocation of his supervised release.  His most recent arrest included missed drug testing appointments, missed supervision appointments, and testing positive for marijuana.  Compl. ¶ 88.  In other words, his parole violations are not alleged to be solely the result of his disability as they include multiple missed appointments and a failed drug test.  And like Davis, Mathis is on lifetime parole supervision.  Compl. ¶ 71.  Any putative preliminary injunction would therefore have no effect on prolonging his supervision term.  And, as with Davis, the mere possibility that he might, in the future, risk missing a supervision appointment—or failing a further drug test—is too remote to warrant a preliminary injunction.  He does not allege any pending appointments that he is at risk of missing, nor does he assert an intent to fail to appear.

 Plaintiffs' reliance on *Honig v. Doe*, 484 U.S. 305 (1988), is misplaced, as that case does not support ignoring the speculative nature of their alleged injuries.  Mem. at 25.  Instead, the Supreme Court in *Honig* first noted that courts "generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct" in assessing irreparable harm.  *Honig*, 484 U.S. at 320 (collecting cases).  The Court then noted the record evidence that the specific nature of the handicap rendered the *Honig* respondent's actions out of his control as he was "unable to govern his aggressive, impulsive behavior."  *Id.*  No such allegations, evidence, or argument exists here:  Plaintiffs are not incapable of attending their supervision appointments—in fact, both make a point of noting that they have attended them previously—but argue only that it can be

difficult for them to do so.  This case therefore more closely aligns with the great weight of authority deeming such alleged injuries too speculative to qualify as "irreparable harm."

III.    **The Balance of Equities Weighs Against an Injunction**

The final two factors—the balance of equities and the public interest—merge when the injunction is sought against the government.  *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 114 (D.D.C. 2020).  Here, where the requested injunction seeks to change the status quo and impose a mandatory obligation on the Commission, that balance weighs against an injunction.

By Plaintiffs' own argument, the allegedly violative practices of the Commission have been in place for the entire duration of supervised release in the District of Columbia. Compl. ¶¶ 11-15. At the very least, the allegedly problematic practices date back to 2000, when the current system of supervised release was enacted.  Compl. ¶ 12.  The long-term and open-ended nature of the practices Plaintiffs challenge can be further seen in the definition of their putative class, which consists of every single individual with a disability who is or will be on supervised release, regardless of when the sentence was imposed.  Compl. ¶ 129.  But such a claim, against a system that has been in place for so long, does not qualify as a situation which now suddenly needs to be the subject of a preliminary injunction.

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'"  *Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  "When the requested preliminary relief would alter the status quo, the standard the movant must satisfy is especially 'demanding.'" *Turner v. Agency for Global Media*, 502 F. Supp. 3d 333, 354-55 (D.D.C. 2020) (quoting *Archdiocese of Wash. v. Wash. Metro Area Transit Auth.*, 897 F.3d 314, 319 (D.C. Cir. 2018)).  "Injunctions that 'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary

12

injunction, 'especially when directed at the United States Government.'" *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013) and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)). Analysis of a demand for an injunction that would have the effect of creating a new status quo therefore on balance favors defendants. *See, e.g.*, *Davis v. Billington*, 76 F. Supp. 3d 59, 68 (D.D.C. 2014); *Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641 (RMU), 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008).

Here, unlike in typical preliminary injunction cases, there is no recent change or threatened action that has changed the status quo. Plaintiffs do not allege any putative modification that the Commission is considering, nor do they point to any regulation or decision that the Commission has enacted. Instead, they challenge the Commission's practices regarding supervision appointments that, by Plaintiffs' own admission, have been in place for at least twenty years. Additionally, Plaintiffs elide their own acknowledgement that the Commission is already providing accommodations in certain instances, such as mental health parole. *See* Mem. at 7. The Commission's regulations also include procedures that address particularized parole conditions in certain instances, such as geriatric parole, 28 C.F.R. § 2.83(e), and parole for individuals with permanent incapacitation or terminal conditions, 29 C.F.R. § 2.77. Plaintiffs ignore this and instead attempt to impose a wholesale restructuring of the Commission's systems without limitation or guidance, and they further attempt to extend the scope of that injunction beyond themselves, impermissibly seeking class-wide relief without a certified class. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 198 (D.D.C. 2020) (limiting analysis of injunctive relief to the named plaintiff where a class was not certified); *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1985) (same).

Plaintiffs do not seek to maintain a status quo pending further litigation; instead, they seek to impose upon the Commission the creation of new regulations that would have far-reaching effects. The balance of equities does not favor the creation of such regulation by injunction, given that the allegedly discriminatory practice has been in place for so long. This Court instead should deny the preliminary injunction.

*     *     *

**CONCLUSION**

Plaintiffs have not established a likelihood of success on the merits, nor have they established a likelihood of irreparable harm. Additionally, as they seek to impose a new status quo on the government, altering a long-standing practice, the balance of equities weighs against an injunction. This Court therefore should deny the Plaintiffs' motion.

Dated: May 21, 2024
      Washington, DC               Respectfully submitted,

                        MATTHEW M. GRAVES
                        D.C. Bar No. #481052
                        United States Attorney

                        BRIAN P. HUDAK
                        Chief, Civil Division

            By:     */s/ Kartik N. Venguswamy*
                        KARTIK N. VENGUSWAMY
                        D.C. Bar No. #983326
                        Assistant United States Attorney
                        601 D Street, NW
                        Washington, D.C. 20530
                        (202) 252-1790
                        kartik.venguswamy@usdoj.gov

                        *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

W. MATHIS, *et al.*,

        *Plaintiffs*,

     v.

UNITED STATES PAROLE COMMISSION,
*et al.*,

        *Defendants*.

Civil Action No. 24-1312 (TNM)

## **[PROPOSED]  ORDER**

UPON CONSIDERATION of Defendants' Opposition, Plaintiffs' Motion for Preliminary Injunction, and the entire record herein, it is hereby

ORDERED that Plaintiffs' motion is DENIED.

SO ORDERED:

_____
Dated

_____
United States District Judge