UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM MATHIS, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-1312 (TNM) |
| U.S. PAROLE COMMISSION, et al., | |
| Defendants. | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Background ............................................................................................................................ 1

Legal Standard .................................................................................................................... 2

Argument ............................................................................................................................. 3

Conclusion ......................................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........................................................................ 6

*Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51 (D.D.C. 2006),
    *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008) ............................................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 3

*Bannister v. U.S. Parole Comm'n*, Civ. A. No. 18-1397 (APM),
    2019 WL 1330636 (D.D.C. Mar. 25, 2019) ................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 2, 3

*Clark v. Skinner*, 937 F.2d 123 (4th Cir. 1991) ......................................................... 7, 8, 9

*Cousins v. Dep't of Transp.*, 880 F. 2d 603 (1st Cir. 1989) ............................................ 7, 8

*Doe v. District of Columbia*, 796 F. Supp. 559 (D.D.C. 1992) ...................................... 8

*Dorsey v. Dep't of Lab.*, 41 F.3d 1551 (D.C. Cir. 1994) ............................................... 4

*Egbert v. Boule*, 596 U.S. 482 (2022) ............................................................................. 6

*J.L. v. Soc. Sec. Admin.*, 971 F.2d 260 (9th Cir. 1992) ................................................... 8

*Lane v. Peña*, 518 U.S. 187 (1996) ............................................................................ 4, 5, 7

*Lane v. Pena*, 867 F. Supp. 1050 (D.D.C. 1994),
    *vacated in part*, 518 U.S. at 190–91 .......................................................... 8

*Moya v. Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020) ...................................... 7

*Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45 (D.D.C. 2020) ..................... 6, 8, 9

*Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99 (D.D.C. 2015) ............................ 6, 7

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ............................................................ 6

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) .................................................. 6

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ................................ 7

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ............................................................................ 6

**Statutes**

29 U.S.C. § 791 ................................................................................................... 4, 5

29 U.S.C. § 794(a) ............................................................................................ passim

29 U.S.C. § 794a(a) ......................................................................................... 5, 7, 9

5 U.S.C. § 702 ........................................................................................................ 8

Pub. L. 93-112, 87 Stat. 355 ................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 2

**Regulations**

28 C.F.R. § 2.204(a)-(b) .......................................................................................... 2

28 C.F.R. § 2.85(a)(1) ............................................................................................. 2

*Enforcement of Nondiscrimination on the Basis of Handicap in
    Federally Conducted Programs*, 49 Fed. Reg. 35,724 (Sept. 11, 1984) .................. 10

Plaintiffs, two individuals with lifetime parole terms in the District of Columbia, bring claims against the United States Parole Commission (the "Commission") and the Court Services and Offender Supervision Agency ("CSOSA") for alleged violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). *See generally* Compl. (ECF No. 1). Specifically, Plaintiffs assert that Defendants did not provide reasonable accommodations for their disabilities, which allegedly affected their ability to comply with the terms of their supervised release, including attending mandatory supervision appointments.

Plaintiffs' claims fail, however, because there is no private right of action to pursue the injunctive relief they seek under the Rehabilitation Act. This Court should therefore dismiss this matter, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## BACKGROUND

Plaintiffs are two disabled individuals who are on parole[1] in the District of Columbia, who claim that Defendants have not properly accounted for their disabilities in setting the terms of their supervision. *See generally* Compl.

William Mathis was convicted in 1985 of First-Degree Murder while Armed and was paroled in 2006. Mathis, who is on lifetime parole supervision, suffers from congestive heart failure. Compl. ¶¶ 71-72. He alleges that his condition makes it difficult to travel to his supervision appointments, which include weekly drug testing and twice-weekly appointments with his Community Supervision Officer ("CSO" or "Supervision Officer"). Compl. ¶¶ 74-75. He further alleges that the schedule of his supervision appointments often conflicts with his medical

---

[1]     Although "supervised release" is a specific term, separate from parole, that applies only to sentences imposed on or after August 5, 2000, Plaintiffs' Complaint uses the term "supervised release" generically to refer to both parole supervision and supervised release. *See* Compl. ¶¶ 11-13. Defendants adopt the same approach for purposes of this brief.

appointments. Compl. ¶¶ 76-78. Most recently, Mathis violated his parole by testing positive for marijuana. Compl. ¶ 88. Mathis is currently on parole supervision under the terms of his release.

Kennedy Davis was convicted in 1995 of Second-Degree Murder and Possession of a Firearm During a Crime of Violence and was paroled in 2011. Davis, who is on lifetime parole supervision, suffers from complications of third-degree burns, as well as mental health conditions including depression and PTSD. Compl. ¶¶ 96-98. The terms of Davis' supervised release include twice-weekly drug testing and regular phone appointments with his Supervision Officer. Compl. ¶¶ 99, 109. Most recently, Davis violated his parole by repeatedly failing to call his Supervision Officer and is currently serving a twelve-month violator term for his parole violations. Compl. ¶ 114.

The Commission is responsible for setting the conditions of each individual's supervised release. Compl. ¶ 14. CSOSA then manages the daily supervision of individuals, including administration of drug testing, appointments with Supervision Officers, and any other treatment or programs that are part of the terms of release. Compl. ¶ 15. The general terms of release include requiring individuals to make an initial report to a Supervision Officer within seventy-two hours of release, regularly make contact with the CSO as the CSO directs, attend any drug or alcohol screenings ordered by the CSO, and, of course, abide by the law in all other respects. 28 C.F.R. §§ 2.85(a)(1), 2.204(a)-(b). The particular details of each individual's supervision are then set by the Supervision Officer. Compl. ¶¶ 43-44.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss assesses the sufficiency of a complaint, testing whether the plaintiff has pled sufficient facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

2

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Twombly*, 550 U.S. at 570. In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## ARGUMENT

In their Complaint (ECF No. 1), Plaintiffs seek only declaratory and injunctive relief, requesting that this Court order Defendants to implement systems and mechanisms to address and correct the allegedly discriminatory supervision system currently in place, and to conduct individualized assessments of what reasonable accommodations are necessary for all individuals currently under the Commission's and CSOSA's supervision. Compl. at 33-34. This is relief, however, that is unavailable to them, because there is no private right of action under the Rehabilitation Act pursuant to which Mathis and Davis can bring their claims.

As an initial matter, Defendants note that they are not asserting sovereign immunity as a bar to Plaintiffs' Complaint; rather, as explained in greater detail below, Plaintiffs' claims are more appropriately brought under the Administrative Procedures Act ("APA"), not the Rehabilitation Act. The APA does contain a waiver of sovereign immunity for injunctive relief for claims

properly brought thereunder, and Defendants do not now argue otherwise.[2]  But Congress did not create a private right of action to enforce the particular section of the Rehabilitation Act at issue in this case, and Plaintiffs' claims are barred as a result.

The Rehabilitation Act prohibits discrimination (1) by federal agencies in their capacity as employers, 29 U.S.C. § 791; (2) by recipients of federal funds and federal agencies in their capacity as funders, 29 U.S.C. § 794(a); and (3) by federal agencies in their capacity as the operators of their own "program[s] or activit[ies]," 29 U.S.C. § 794(a).  It is this last prohibition, established in Section 504 of the Rehabilitation Act, which is at issue in this case.[3]

Section 504 of the Rehabilitation Act originally applied only to recipients of federal funds. When passed in 1973, it stated only that disabled individuals should not be "excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance."  Pub. L. 93-112, 87 Stat. 355, 394.  The addition of the language relating to "any program or activity conducted by any Executive agency" (29 U.S.C. § 794(a)) only came later, in the 1978 amendment.  *Dorsey v. Dep't of Lab.*, 41 F.3d 1551, 1553 (D.C. Cir. 1994).

In that same 1978 amendment, Congress added Section 505 of the Rehabilitation Act, expressly setting forth the remedies available to individuals who sought to bring claims under the Rehabilitation Act.  Thus, Congress provided that "the remedies, procedures, and rights set forth

---

[2]     Defendants do not, however, imply or concede that any putative APA claims Plaintiffs may bring in the future have merit or would survive a motion to dismiss, and Defendants reserve their rights to so move.

[3]     Plaintiffs are not federal employees, and Defendants do not provide financial assistance to or fund their own actions in operating supervised release; the first two prohibitions are therefore not at issue and are unavailable to Plaintiffs.  *See Lane v. Peña*, 518 U.S. 187, 195 (1996) ("The Department of Transportation . . . is not a 'Federal provider' of financial assistance with respect to the Merchant Marine Academy, which the Department itself administers.").

in" Title VII's comprehensive scheme "shall be available, with respect to *any* complaint" under 29 U.S.C. § 791, alleging employment discrimination.  29 U.S.C. § 794a(a)(1) (emphasis added). Congress did not, however, use the same language in setting forth remedies for violations of Section 504; instead, it limited "the remedies, procedures, and rights set forth in Title VI . . . to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance" under Section 504.  29 U.S.C. § 794a(a)(2).  In other words, Congress applied the remedial scheme of Title VII to all complaints under Section 501 of the Rehabilitation Act but did not use the same language in defining the remedies for Section 504.  As the Supreme Court found, in interpreting that dichotomy, "Congress did not intend to treat all [Section 504] defendants alike with regard to remedies.  Had Congress wished to make Title VI remedies available broadly for *all* [Section 504] violations, it could easily have used language" that accomplished that intent.  *Lane*, 518 U.S. at 193 (emphasis in original).  And the fact that the enactment of 29 U.S.C. § 794a occurred contemporaneously with the addition of the "programs and activities" language lends further credence to a finding that the discrepancy in the enabling language was deliberate and meaningful.  For this reason, the Supreme Court held in *Lane* that there was no ability to seek monetary damages under the "programs and activities" language of Section 504, contrasting the lack of a clear waiver with the language of the APA.  *Lane*, 518 U.S. at 196.

In *Lane*, the only issue was the question of monetary damages, and the Supreme Court thus did not reach the separate question of whether injunctive relief was available.  That same analysis, however, and the same difference in language in the remedies provisions of 29 U.S.C. § 794a, leads to the inescapable conclusion that there is no private right of action to enforce the "programs and activities" language of Section 504 under the Rehabilitation Act itself.  The D.C. Circuit has

not yet had occasion to resolve this issue, and Defendants further recognize that courts in this district are split on the question. *Compare Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 55-56 (D.D.C. 2020) (Boasberg, J.) (finding an implied private right of action against federal programs under Section 504), *with Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 113 (D.D.C. 2015) (Moss, J.) (concluding that any cause of action "for a substantive claim of disability discrimination in a federal program . . . arises under the" Administrative Procedures Act, not the Rehabilitation Act), *and Bannister v. U.S. Parole Comm'n*, Civ. A. No. 18-1397 (APM), 2019 WL 1330636, *6 (D.D.C. Mar. 25, 2019) (concluding that any putative private cause of action against an agency arises under the APA, not the Rehabilitation Act). This Court should follow *Sai* and *Bannister*, as well as the weight of authority from other circuits and the mode of analysis set forth by the Supreme Court, and conclude that there is no implied right of action to sue a federal agency in its capacity as an operator of a federal program or activity under the Rehabilitation Act.

The Supreme Court has clarified that, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The judicial task is "limited solely to determining whether Congress intended to create the private right of action asserted." *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Id.* The Supreme Court has "repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Jesner*, 584 U.S. at 264 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004)); *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("At bottom, creating a cause of action is a legislative endeavor.").

In this case, Congress's 1978 amendments to the Rehabilitation Act included the creation of express causes of action in Section 505 but did so only for one of the two Section 504 prohibitions. *See* 29 U.S.C. § 794a(a). In other words, Congress provided contemporaneous and related evidence that it knew how to create private rights of action under the Rehabilitation Act while simultaneously limiting the extent to which it was creating those rights. And it is "an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Reading the Rehabilitation Act as a whole, Congress provided that Section 504 would apply to non-funding activities of the federal government, and that agencies would need to promulgate regulations to provide for compliance with the Rehabilitation Act, but it did not create a private right of action to pursue claims under the Rehabilitation Act, despite doing so for other kinds of claims. It therefore follows that Congress intended such challenges to be brought through the administrative pathway. *See Sai*, 149 F. Supp. 3d at 114 (when Congress "intends to permit only declaratory and injunctive relief, there will often be no need to provide for a cause of action that is independent of the APA"); *see also Lane*, 518 U.S. at 192-93 (interpreting Section 505 and observing that "Congress did not intend to treat all § 504(a) defendants alike with regard to remedies").

This approach is supported by the weight of authority from other circuits, which holds that there is no implied private right of action under Section 504 for federal programs and activities. Three circuits have adopted this view, including an en banc opinion from the First Circuit authored by then-Judge Breyer. *See Moya v. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020); *Clark v. Skinner*, 937 F.2d 123, 126 (4th Cir. 1991); *Cousins v. Dep't of Transp.*, 880 F. 2d 603, 610 (1st Cir. 1989) (en banc). Only the Ninth Circuit has held otherwise, in a decision that pre-

dates the Supreme Court's analysis in *Lane*.  *See J.L. v. Soc. Sec. Admin.*, 971 F.2d 260, 268 (9th Cir. 1992).  At heart, Plaintiffs seek review of agency action and an injunction requiring regulatory changes.  The APA, not the Rehabilitation Act, provides the avenue for such claims.

The contrary conclusion in *National Association of the Deaf* is distinguishable.  First, the Court reasoned that Congress did not expressly "direct[ ] those plaintiffs who seek relief from Executive agencies' violations of Section 504 to rely on the" APA.  *Id.*  But the court did not explain why it would have been necessary (or even important) for Congress to do so.  *See Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 54.  The APA itself provides that anyone "adversely affected or aggrieved within the meaning of a relevant statute" can obtain review of "agency action" pursuant to the APA.  5 U.S.C. § 702.  Given the APA's general cause of action, it would have been unnecessary for Congress to additionally specify in the Rehabilitation Act that plaintiffs challenging the federal government's compliance with Section 504 in the government's non-funding activities could bring suit under the APA.

Additionally, the *National Association of the Deaf* decision relied on several cases in this district analyzing whether the Rehabilitation Act waives the government's sovereign immunity, or standing for the proposition that declaratory and injunctive relief was available, but those cases did not address the separate question of whether the available cause of action lies within the Rehabilitation Act itself or the APA.  486 F. Supp. 3d at 55–56 (citing *Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51, 57–58 (D.D.C. 2006), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008); *Lane v. Pena*, 867 F. Supp. 1050, 1053 (D.D.C. 1994), *vacated in part*, 518 U.S. at 190–91; and *Doe v. District of Columbia*, 796 F. Supp. 559, 573 (D.D.C. 1992)).

Finally, the decision distinguished the First Circuit's and Fourth Circuit's opinions in *Cousins* and *Clark* on the basis that those cases "dealt with Executive agencies' acting as a

regulator, as opposed to in a substantive capacity." 486 F. Supp. 3d at 56.  But *Cousins* and *Clark* made clear that their holdings apply to "any program or activity conducted by any Executive agency," 29 U.S.C. § 794(a).  *Cousins* explained that the category of "any program or activity conducted by any Executive agency" "presumably include[ed] regulatory programs," 880 F.2d at 605; the *Cousins* court did not purport to limit its reasoning to regulatory actions as opposed to non-funding actions more generally.  *Cousins* used the phrase "as regulator" to describe the government's non-funding activities because the plaintiff in that case challenged a Department of Transportation rule.  *See id.* at 604, 605.  The same is true in *Clark*, which also involved a challenge to a Department of Transportation rule.  937 F.2d at 125.  Contrary to *National Association of the Deaf*'s suggestion, then, the sound analysis of *Cousins* and *Clark* applies equally to any non-funding, non-employment "program or activity conducted by any Executive agency," 29 U.S.C. § 794(a), regardless of whether a regulatory or programmatic activity is at issue.

The distinction in *National Association of the Deaf* between agencies acting in a "regulatory" versus "substantive" capacity also misses the point because the statutory text of the Rehabilitation Act does not distinguish along these lines.  Section 504(a) contains a single category of "any program or activity conducted by any Executive agency or by the United States Postal Service."  *Id.*  Section 505(a)(2) creates a subcategory by allowing a private cause of action for federal activities that involve the provision of federal financial assistance.  *Id.* § 794a(a)(2).  Section 505(a)(1) allows a private cause of action for another category applicable to the federal government: employment.  *Id.* § 794a(a)(1).  But the Rehabilitation Act does not distinguish among federal programs and activities based on whether they are "regulatory" or "substantive" in nature.  *See id.* § 794(a).

Moreover, the Department of Justice has acknowledged and accounted for the absence of a right of action to enforce the relevant provision of the Rehabilitation Act.  In a 1984 regulation, the Department recognized that "[t]he 1978 amendments to section 504 failed to provide a specific statutory remedy for violations of section 504 in federally conducted programs."  *Enforcement of Nondiscrimination on the Basis of Handicap in Federally Conducted Programs*, 49 Fed. Reg. 35,724, 35,732 (Sept. 11, 1984).  To provide for enforcement of portion of Section 504, the Department created an equitable complaint resolution process, which can be found at 28 C.F.R. § 39.170.  *Id.*

At their core, Plaintiffs' claims seek to enjoin the Commission and CSOSA to implement policies and regulations "to assess whether and what types of accommodations [individuals] require, and to provide such accommodations" to account for the disabilities of individuals on supervised release.  Compl. ¶ 146.  Plaintiffs therefore spend much of the Complaint discussing Defendants' alleged failures to have "any system" or "any guidance, instructions, or policies" to accommodate disabled individuals.  *See, e.g.*, Compl. ¶¶ 36, 44, 51, 54, 59, 167, 147, 149, 150.  In other words, what Plaintiffs clearly seek is APA relief.  But there is already an avenue by which a plaintiff can pursue that kind of regulatory relief:  the APA.  Congress has not created a duplicate, redundant right of action in the Rehabilitation Act merely to mirror relief that is already—and only—available through the APA.  At bottom, neither the text nor history of the Rehabilitation Act supports finding a private right of action under Section 504, and Plaintiffs' claims—substantive, regulatory, or otherwise—are more properly brought, if at all, under the APA.

\*    \*    \*

**CONCLUSION**

Congress did not create a private right of action to enforce the language of Section 504 of the Rehabilitation Act when it amended that language in 1978, and Plaintiffs cannot now pursue such claims.  This Court therefore should dismiss the Complaint.

Dated: June 25, 2024
     Washington, DC            Respectfully submitted,

                               MATTHEW M. GRAVES, D.C. Bar No. #481052
                               United States Attorney

                               BRIAN P. HUDAK
                               Chief, Civil Division

          By:     */s/ Kartik N. Venguswamy*
                               KARTIK N. VENGUSWAMY
                               D.C. Bar #983326
                               Assistant United States Attorney
                               601 D Street, NW
                               Washington, D.C. 20530
                               (202) 252-1790
                               kartik.venguswamy@usdoj.gov

                               *Attorneys for the United States of America*