UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM MATHIS, et al.,

Plaintiffs,

v.

U.S. PAROLE COMMISSION, et al.,

Defendants.

Civil Action No. 24-1312 (TNM)

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants respectfully submit this reply in further support of their Motion to Dismiss (ECF No. 25-1).

As Defendants demonstrated in their Motion, Plaintiffs' Complaint should be dismissed because there is no private right of action to pursue the injunctive relief they seek under the Rehabilitation Act, 29 U.S.C. § 794(a). In their Opposition (ECF No. 27), Plaintiffs conflate facts and misstate the law, but ultimately do not—and cannot—overcome the simple fact that their claims are unavailable based on the plain language of the statute.

As an initial matter, Defendants note that Plaintiffs misconstrue the context of the pending motion to dismiss. Plaintiffs imply (Opp. at 6) that Defendants' focus on the statutory unavailability of the requested relief is somehow a concession that Plaintiffs have otherwise established that they are being discriminated against. Not so. Should Plaintiffs' claims survive the motion to dismiss, Defendants will have the ability and opportunity to contest the factual bases of Plaintiffs' allegations. The present Motion is appropriately limited to the legal question of whether relief is available under the Rehabilitation Act, and Plaintiffs' implication that Defendants have made any concessions is mistaken.

## I.    <u>Section 504 Is Not Judicially Enforceable</u>

At heart, the present issue before the Court is whether there exists a private right of enforcement for Section 504 of the Rehabilitation Act, specifically the prohibition on discrimination "under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).

Section 504 of the Rehabilitation Act originally applied only to recipients of federal funds. When passed in 1973, it stated only that disabled individuals should not be "excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance." Pub. L. 93-112, 87 Stat. 355, 394. The language used "was patterned after, and is almost identical to, the anti-discrimination language" of Title VI. S. Rep. No. 93-1297, at 39-40 (1974). That language, in turn, had been repeatedly interpreted to imply a private cause of action by the time Congress passed the Rehabilitation Act. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979). It is therefore a fair assumption that Congress fully intended the original version of Section 504 to be privately enforceable, as Congress is "presume[d]" to be "thoroughly familiar with . . . important precedents" when it acts. *Cannon*, 441 U.S. at 699. Under Plaintiffs' reading (Opp. at 7-9), the Court's analysis should stop there.

But this approach ignores Congress's subsequent actions. In 1978, Congress amended the Rehabilitation Act in two important ways. First, Congress added the language relating to "any program or activity conducted by any Executive agency" (29 U.S.C. § 794(a)). *Dorsey v. Dep't of Lab.*, 41 F.3d 1551, 1553 (D.C. Cir. 1994). And second, Congress added Section 505 of the Rehabilitation Act, expressly setting forth the remedies available to individuals who sought to bring claims under the Rehabilitation Act. Thus, Congress provided that "the remedies, procedures, and rights set forth in" Title VII's comprehensive scheme "shall be available, with respect to *any* complaint" under 29 U.S.C. § 791, alleging employment discrimination. 29 U.S.C.

2

§ 794a(a)(1) (emphasis added).  Congress did not, however, use the same language in setting forth remedies for violations of Section 504; instead, it limited "the remedies, procedures, and rights set forth in Title VI . . . to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance" under Section 504.  29 U.S.C. § 794a(a)(2).

In other words, Congress applied the remedial scheme of Title VII to all complaints under Section 501 of the Rehabilitation Act but did not use the same language in defining the remedies for Section 504.  As the Supreme Court found in interpreting that dichotomy, "Congress did not intend to treat all [Section 504] defendants alike with regard to remedies.  Had Congress wished to make Title VI remedies available broadly for *all* [Section 504] violations, it could easily have used language" that accomplished that intent.  *Lane v. Peña*, 518 U.S. 187, 193 (1996) (emphasis in original).  And the fact that the enactment of 29 U.S.C. § 794a occurred contemporaneously with the addition of the "programs and activities" language lends further credence to a finding that the discrepancy in the enabling language was deliberate and meaningful.  For this reason, the Supreme Court held in *Lane* that there was no ability to seek monetary damages under the "programs and activities" language of Section 504, contrasting the lack of a clear waiver with the language of the APA.  *Lane*, 518 U.S. at 196.

Again, Congress is presumed to be aware of relevant Supreme Court precedent when it acts.  *See Cannon*, 441 U.S. at 699.  Additionally, a statute "should be construed so that . . . no part will be inoperative or superfluous, void or insignificant[.]"  *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).  But this is precisely what Plaintiffs' argument would mean.  Plaintiffs ask the Court to believe that Congress unnecessarily codified the availability of a private remedy for all of Section 504 when the Supreme Court had already ruled that such a private remedy was implicitly available.  Moreover, Plaintiffs ask this Court to

ignore that Congress used different phrasing in purportedly codifying that relief. *Compare* 29 U.S.C. § 794a(a)(1) *with* 29 U.S.C. § 794a(a)(2). The only reading of Section 505 that avoids superfluity and insignificance, and that gives weight to Congress's choice of phrasing, is to find that the codification of a private right of action does not apply to the "programs and activities" language of Section 504. Otherwise, Section 505 would be a meaningless exercise of Congressional power.

Plaintiffs attempt (Opp. at 10) to overcome this fact by relying on Section 505(b), 29 U.S.C. § 794a(b), which makes attorney's fees available in "actions or proceedings to enforce" the Rehabilitation Act. In Plaintiffs' reading, the possibility of attorney's fees must mean that there is a private right of action to enforce the "programs and activities" language of Section 504. *See* Opp. at 10. But this approach begs the question. Congress making attorney's fees available in actions to enforce the Rehabilitation Act does not widen the scope of "actions." Instead, in Section 505(a), Congress made clear what actions were available—and what action was not—and in Section 505(b), permitted attorney's fees for those actions that had been made available.

The Supreme Court has emphasized that, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The judicial task is "limited solely to determining whether Congress intended to create the private right of action asserted." *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Id.* The structure and history of Section 504 and Section 505, when read together and in light of the manner of their creation, does not support a finding that Congress intended the "programs and activities" language of Section 504 to be privately enforceable.

The Supreme Court has addressed an analogous situation and has similarly found no private right of action for Section 17(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78q(a). *Touche Ross*, 442 U.S. at 571. In that case, which was decided just one year after the 1978 amendment to the Rehabilitation Act, the Supreme Court found it compelling that Section 17(a) was "flanked by provisions of the 1934 Act that explicitly grant private causes of action. . . . Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 571-72. The Supreme Court rejected the opposing argument—identical to the one Plaintiffs makes (Opp. at 8-9)—that a private right of action existed because Congress did not expressly deny it, holding that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Id*. at 571 (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64 (1978)). Just as in *Touche Ross*, the plain reading of the Rehabilitation Act counsels against an implied private right of action.

Plaintiffs argue (Opp. at 17-18) that this reading would "undermine" Congressional intent because it would leave them without relief. But Congress routinely passes statutes that establish limits or proscribe certain conduct to protect individuals, but for which there are no private rights of action. For example, the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 824a-3, establishes limits on prices paid for electricity by utilities and requires those utilities to provide data to regulators, but there is no private right of action against the federal regulator for any violations. *Swecker v. Fed. Energy Reg. Comm'n*, Civ. A. No. 21-1590 (RCL), 2022 WL 4534944 (D.D.C. Sept. 28, 2022). The Prompt Payment Act, 31 U.S.C. § 3905, requires federal contractors to include payment clauses to protect subcontractors from late payment, but there is no private right of action available to subcontractors. *United States ex rel. IES Com., Inc. v. Continental Ins. Co., Inc.*, 814 F. Supp. 2d 1, 2-3 (D.D.C. 2011). The Davis-Bacon Act, 40 U.S.C. § 276a(a),

protects construction workers by guaranteeing certain minimum wages, but there is no private right of action available to those workers. *Univ. Rsch. Ass'n, Inc. v. Coutu*, 450 U.S. 754, 771-73 (1981). Indeed, merely because a statute is "designed to benefit a particular class" or protect certain individuals "does not end the inquiry" and does not, by itself, "support [the] implication of a private remedy. *Id.*

Plaintiffs also argue (Opp. at 18-19) that the Department of Justice guidance on disability law states that there is a private right of action to enforce Section 504. But the statement that "Section 504 may also be enforced through private lawsuits" is not a guarantee that each separate part of that section is separately enforceable. After all, Section 504 also requires copies of proposed regulations to be "submitted to appropriate authorizing committees of the Congress," but presumably Plaintiffs do not assert that this clause is also privately enforceable. *See* 29 U.S.C. § 794(a).

Plaintiffs attempt to draw a distinction (Opp. at 12-15) between an implied private right of action to enjoin the promulgation of regulations to enforce the Rehabilitation Act—which they concede is likely unavailable—and an implied private right of action to enforce substantive rights protected by the Rehabilitation Act. But this dichotomy finds no purchase in the language of the Rehabilitation Act, and neither form of relief is available to Plaintiffs. Even assuming, *arguendo*, that there is a private right of action to enforce substantive rights for a particular individual with specific allegations of discrimination, that is not what Plaintiffs actually allege. Although Plaintiffs repeatedly state that they are not asking for an order that Defendants promulgate a regulation, the complaint repeatedly insists that Defendants need a "system," "guidance, instructions, or policies" regarding accommodations of disabilities. Compl. ¶¶ 149-50 (ECF No. 1). They simultaneously admit (Opp. at 20) that they are not challenging "any particular parole

revocation decision or other final agency action." And they insist that they simply want this Court to order Defendants to comply with the Rehabilitation Act. But the statutory section which they want enforced, Section 504(a), is entitled "Promulgation of rules and regulations" and orders the heads of executive agencies to "promulgate such regulations as may be necessary to carry out the" the Rehabilitation Act. Regardless of whether any hypothetical Administrative Procedures Act ("APA") claim would be successful, then, it is self-evident from Plaintiffs' complaint and arguments that the relief they seek is regulatory in nature.

Finally, Plaintiffs insist (Opp. at 19-20) that Defendants' refusal to concede that Plaintiffs' claims would be successful if brought under the APA is a "stunning assertion" and is fatal to Defendants' arguments. Again, Plaintiffs misapprehend the procedural posture of this matter. Defendants have moved to dismiss Plaintiffs' complaint. Defendants have not made, and need not make, any arguments regarding a hypothetical claim brought under a different statutory scheme not asserted in the complaint.

Ultimately, the relief Plaintiffs seek is simply unavailable to them. All their arguments to the contrary rely on this Court determining that Congress did not know what it was doing when it drafted Sections 504 and 505. This Court should decline the invitation to so find, and it should instead grant Defendants' motion to dismiss.

## II.    <u>The Court Should Not Exercise Its Equitable Powers</u>

Unable to overcome the plain language of the Rehabilitation Act, Plaintiffs turn to the Court's equitable powers. Opp. at 21-24. Plaintiffs again begin (Opp. at 21) with a misapprehension of the procedural posture, finding fault with Defendants' motion for ignoring an argument made by Plaintiffs in their preliminary injunction brief. Defendants have moved to dismiss the complaint; Defendants are not obligated to address putative arguments made in a

different context that are not alleged in the complaint.  Nevertheless, Plaintiffs' arguments for equitable relief fail.

Plaintiffs rely on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), for their argument that this Court can exercise "inherent equitable powers to enjoin violations of federal law[.]" Opp. at 21.  But they ignore the fact that, in that case, the Supreme Court concluded that there was no private right of action to enforce Section 30(A) of the Medicaid Act and therefore the claim could not proceed.  *Armstrong*, 575 U.S. at 328-30.  The Supreme Court found it compelling that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).  As detailed above and in Defendants' Motion, Congress expressly provided for enforcement of part of Section 504, which suggests that Congress intended to preclude any other enforcement.

Plaintiffs also ignore the fact that there is already an avenue for equitable relief, namely, lodging a formal complaint with the Department of Justice raising "allegations of discrimination on the basis of handicap in programs or activities conducted by" the Department of Justice, of which Defendants are part.  *See* 28 C.F.R. § 39.170.  Tellingly, in addition to conceding that they are not challenging any particular parole revocation decision, Plaintiffs have not alleged that they made any efforts at seeking administrative relief.

More importantly, Plaintiffs offer the equitable powers argument as an alternative approach if this Court first agrees that there is no private right of action to enforce the "programs and activities" language of Section 504.  But for this Court to determine that there is no private right of action to enforce a statute, and then nevertheless to determine that it has the equitable power to provide a remedy not contemplated by Congress, would directly contravene the Supreme Court's

caution in *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017).  As is made clear in *Ziglar*, where a statute does not display "'an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Id.* (quoting *Sandoval*, 532 U.S. at 2896-87).

In other words, this Court should hesitate before inventing a remedy out of whole cloth, contrary to the intent of Congress, merely because Plaintiffs insist that they deserve relief.

## CONCLUSION

Congress did not create a private right of action to enforce the language of Section 504 of the Rehabilitation Act when it amended that language in 1978, and Plaintiffs cannot now pursue such claims.  This Court therefore should grant Defendants' motion and dismiss the Complaint.

Dated: July 19, 2024
      Washington, DC                      Respectfully submitted,

                                    MATTHEW M. GRAVES, D.C. Bar No. #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division

              By:     */s/ Kartik N. Venguswamy*
                                    KARTIK N. VENGUSWAMY
                                    D.C. Bar #983326
                                    Assistant United States Attorney
                                    601 D Street, NW
                                    Washington, D.C. 20530
                                    (202) 252-1790
                                    kartik.venguswamy@usdoj.gov

                                    *Attorneys for the United States of America*