UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| W. MATHIS, et al., <br><br>          Plaintiffs, <br><br>     v. <br><br> UNITED STATES PAROLE COMMISSION, et al., <br><br>          Defendants. | Civil Action No. 24-1312 (TNM) |

**MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 1

I.      Factual Background ....................................................................................... 1

II.     Procedural Background.................................................................................. 5

LEGAL STANDARDS ............................................................................................... 6

ARGUMENT .............................................................................................................. 7

I.      The Proposed Class Does Not Satisfy Commonality ............................................. 7

II.     Davis Is Not a Typical Class Member .................................................................. 12

III.    The Proposed Class Does Not Satisfy Ruly 23(b)(2) ........................................... 13

CONCLUSION............................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................................... 7

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019) .................................................. 11

*Bynum v. District of Columbia*, 217 F.R.D. 43 (D.D.C. 2003)...................................................... 14

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ................................................................................... 6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................................. 6

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
    239 F.R.D. 9 (D.D.C. 2006)................................................................................................... 13

*DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) .......................................... 8, 9, 11, 12

*Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006)........................................................................ 7

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................. 6, 7

*Harris v. Koenig*, 271 F.R.D. 383 (D.D.C. 2010)........................................................................... 6

*Hartman v. Duffey*, 19 F.3d 1459 (D.C. Cir. 1994) ....................................................................... 7

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014) ............................................................................... 12

*In re Veneman*, 309 F.3d 789 (D.C. Cir. 2002) ........................................................................... 14

*In re White*, 64 F.4th 302 (D.C. Cir 2023)..................................................................................... 8

*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) ....................................................... 14

*Lightfoot v. District of Columbia*, 273 F.R.D. 314 (D.D.C. 2011) .......................................... 8, 14

*Love v. Johanns,* 439 F.3d 723 (D.C. Cir. 2006) ........................................................................... 8

*Pappas v. District of Columbia*, Civ. A. No. 19-2800 (RC),
    2024 WL 1111298 (D.D.C. Mar. 14, 2024) ............................................................................ 7

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388 (6th Cir.1998)........................................................ 8

*Steele v. United States*, 159 F. Supp. 3d 73 (D.D.C. 2016),
    *on reconsideration in part*, 200 F. Supp. 3d 217 (D.D.C. 2016)........................................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ passim

**Statutes**

18 U.S.C. § 3655 ........................................................................................................... 12

29 U.S.C. § 794(a) ...................................................................................................... 1, 5

D.C. Code § 24-403.01(b) .............................................................................................. 13

D.C. Code § 24-405 ......................................................................................................... 3

D.C. Code 24-133 ........................................................................................................... 12

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... passim

**Regulations**

28 C.F.R. § 2.101 ............................................................................................................. 4

28 C.F.R. § 2.103 ............................................................................................................. 4

28 C.F.R. § 2.200(b) ........................................................................................................ 2

28 C.F.R. § 2.204 ......................................................................................................... 2, 3

28 C.F.R. § 2.210 ........................................................................................................... 13

28 C.F.R. § 2.211 ......................................................................................................... 3, 4

28 C.F.R. § 2.214 ............................................................................................................. 4

28 C.F.R. § 2.216 ............................................................................................................. 4

28 C.F.R. § 2.40 ........................................................................................................... 2, 3

28 C.F.R. § 2.70(b) .......................................................................................................... 2

28 C.F.R. § 2.85 ............................................................................................................... 2

28 C.F.R. § 2.95 ............................................................................................................. 13

28 C.F.R. § 2.98 ............................................................................................................... 4

Plaintiff Kennedy Davis, an individual with a lifetime parole term in the District of Columbia, has brought claims against the United States Parole Commission (the "Commission") and the Court Services and Offender Supervision Agency ("CSOSA"), along with the heads of those agencies, alleging violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). *See generally* Compl. (ECF No. 1).  Davis now moves to certify a class of all other individuals who are or may in the future be on parole or supervised release in the District of Columbia.[1]

Davis does not meet his burden to certify a class in this case, contrary to the conclusory points raised in his motion.  *See* Renew Mot. for Class Cert. ("Mot.," ECF No. 40).  Instead, as shown in greater detail below, Davis has not established the elements of commonality, nor has he demonstrated that Defendants treat all members of the proposed class in the same way, as he is required to do under the Federal Rules of Civil Procedure ("Rules").  *See* Fed. R. Civ. P. 23.  This Court therefore should deny Davis's Motion and order that this case proceed with only Davis as the plaintiff.

## BACKGROUND

### I.    Factual Background

While the Commission has no written policy requiring the assessment and accommodation of individuals on parole or supervised release, it does take known disabilities into consideration when imposing conditions of parole or supervised release and evaluating alleged violations of those conditions.  Moreover, individuals are afforded opportunities to raise disability-related needs and request accommodations and can appeal the imposition of special conditions.

---

[1]    Individuals who committed U.S. Code offenses before November 1, 1987, are subject to parole.  Individuals who committed D.C. Code offenses before August 5, 2000, are subject to parole, while individuals who commit D.C. Code offenses thereafter are subject to supervised release.  *See* Sentencing Reform Amendment Act of 2000, D.C. Law 13-302.  For ease of reference, Defendants refer to them generally herein as "supervision."

The Commission is involved in the imposition of conditions of supervision for parole and supervised release at two distinct parts of the supervision process.  The first is at the stage just prior to an individual's release on parole or supervised release, at which time the Commission issues a parole certificate or certificate of release.  In those documents, the Commission lists the general conditions of supervision that will apply along with any special conditions.  *See* 28 C.F.R. §§ 2.70(b), 2.200(b).  These conditions have a relatively high level of generality, allowing for a great deal of flexibility in what will specifically be required as a condition of supervision by each individual's Community Supervision Officer (or "CSO") at CSOSA.  For example, one of the general conditions of supervision for parole or supervised release that the Commission typically imposes is that the supervised individual must, "[b]etween the first and third day of each month, . . . make a written report to the supervision officer" and "must also report to the supervision officer as that officer directs."  28 C.F.R. § 2.204(a)(4)(i); *see id.* § 2.40(a)(1) (applying the same general conditions to U.S. Code parolees), § 2.85(a)(1) (applying the same general conditions to D.C. Code parolees).  The supervised individual's Community Supervision Officer has discretion to craft the actual contours of supervision (for example, how often they will meet and where and when) and the authority to adjust those details to reasonably accommodate the supervised individual as necessary.

Special conditions of supervision imposed by the Commission are conditions that may be added to the general conditions if they are "reasonably related to the nature and circumstances of [the individual's] offense or [his or her] history and characteristics," meet at least one of a list of purposes of criminal sentencing, and involve no greater deprivation of liberty than is necessary. *Id.* § 2.204(b)(1).  Examples of special conditions include participation in a drug or alcohol treatment program or permitting the Community Supervision Officer to conduct searches of the

individual's person, home, vehicle, or any other area under the individual's control at any time. *Id.* § 2.204(b)(2). In parole cases, conditions are typically discussed at the hearing in which parole is granted, at which time the individual may raise any disability-related reasonable accommodations he believes he requires. *See* Affidavit of Frederick Helenihi ("Helenihi Aff.") ¶ 4 (attached hereto as Exhibit A).

Thus, the conditions of parole and supervised release that the Commission imposes set the broad framework that CSOSA operates within in carrying out the details of supervision. If an individual has a disability that interferes with his or her ability to comply with even the broad framework of the Commission's conditions, he or she may request modifications to those conditions either before or after their imposition. *See* Helenihi Aff. ¶ 4; *see also* 28 C.F.R. §§ 2.40(d), 2.240(c). For example, if an individual needs an exemption to the general conditions regarding drug use based on a medical condition, that is a modification the Commission could grant unilaterally. *See* Helenihi Aff. ¶ 4.

After the imposition of the general and, in some instances, special conditions, the Commission has no active role in an individual's supervision unless CSOSA refers that individual to the Commission for an alleged violation of the conditions of their supervised release or parole. *See* Helenihi Aff. ¶ 3. If such a referral occurs, the Commission assesses the referral on its face to determine if it believes there is enough information to pursue a potential revocation. *See id.* ¶ 5; *see also* D.C. Code § 24-405; 28 C.F.R. § 2.211.

If the Commission does not believe that any action against the supervised individual is warranted on the face of the referral, as occurs in appropriate cases, it informs CSOSA that the Commission is declining pursuit of such an action. *See* Helenihi Aff. ¶ 5. Where, on the face of the information sent by CSOSA, the Commission believes an accommodation would be more

3

appropriate than a revocation, the Commission has declined to pursue revocation proceedings; it has also proposed accommodations to CSOSA.  *See id.*

If, on the other hand, the Commission determines there is enough information to justify a revocation proceeding, it issues a warrant or a summons for the supervised individual based on the alleged violation.  *See* 28 C.F.R. §§ 2.98, 2.211(a).  Once that warrant has been executed or summons has been responded to, the Commission holds a probable cause hearing regarding the alleged violation.  *See id.* §§ 2.101, 2.214.  Prior to the hearing, the supervised individual is informed that he has the right to accept representation by an attorney assigned by the Public Defender Service, waive representation, or postpone the hearing in order to obtain representation.  *See* 28 C.F.R. §§ 2.101(b), 2.214(b).  At this hearing, the supervised individual has the opportunity to admit or deny the charges, rebut or explain the allegations contained in the evidence underlying each charge, present witness statements and documentary evidence, and confront and cross-examine any adverse witnesses in attendance unless good cause is found for not permitting confrontation.  *See id.* §§ 2.101(c), 2.214(c).

If probable cause is found, the Commission then holds a revocation hearing, at which the parolee or supervised releasee has another opportunity to tell his or her side of the story, rebut evidence, and explain any mitigating circumstances including the existence of a disability and how that disability may have contributed to the alleged violation.  *See id.* §§ 2.103, 2.216.  In particular, the supervised individual has the opportunity to provide their own evidence in defense or mitigation of the charges.  *See id.* § 2.103(g) (parolees); § 2.216(h) (supervised releasees).  And again, individuals may be represented by counsel or choose not to be represented.  *See* 28 C.F.R. §§ 2.103(e), 2.216(f).

Where the Commission is aware of a disability the parolee or supervised releasee has and the parolee or supervised releasee persuades the Commission that the violation occurred because they lacked a reasonable accommodation for that disability, the Commission may and often does reinstate the individual to supervision rather than imposing prison time for the violation. *See* Helenihi Aff. ¶ 6. If the alleged disability-related inability to comply with the conditions of supervision relates to a general or special condition, the Commission assesses whether a reasonable accommodation is required and, if so, provides it by modifying the condition at issue. If the alleged difficulty lies with the details of supervision prescribed by CSOSA, however, the Commission cannot unilaterally modify those conditions." *Id*. In such cases, the Commission may then propose a modification to CSOSA.

In sum, there are two distinct phases at which the Commission can assess an individual's disabilities and determine whether it is necessary to modify the conditions of supervision to account for those disabilities. While the Commission has no written policy requiring such assessment or accommodation, it frequently performs such an assessment based on an individual's assertion of disability and, should it find that a reasonable accommodation is warranted, the Commission provides such accommodation.

## II.    <u>Procedural Background</u>

Davis, an individual with a lifetime parole term, brings claims against Defendants alleging violations of Section 504 of the Rehabilitation Act. After filing his Complaint (ECF No. 1), he moved for a preliminary injunction (ECF No. 3), as well as class certification (ECF No. 2). After the parties briefed the preliminary injunction issues as well as Defendants' Motion to Dismiss (ECF No. 25), this Court denied the motion to dismiss and granted the preliminary injunction. Mem. Op. Granting Prelim. Inj. (ECF No. 31). The Court also denied without prejudice the class certification motion. Mem. Order (ECF No. 32). Although this Court found that Davis had neither

an explicit nor implied private right of action to bring suit under Section 504 of the Rehabilitation Act, it exercised its equitable powers to permit Davis to proceed with his claims. *Id.* Davis subsequently renewed his motion for class certification (ECF No. 40).

## LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

To certify a class under Rule 23, a plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three Rule 23(b) requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To qualify for such exceptional treatment and obtain class certification, Rule 23 requires that a plaintiff show:

(1)  the class is so numerous that joinder of all members is impractical;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.

The Supreme Court has held that "Rule 23 does not set forth a mere pleading standard. Parties seeking class certification must affirmatively demonstrate [their] compliance with the Rule—that is, they must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350; *see also id.* at 350–51 ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982))); *Harris v. Koenig*, 271 F.R.D. 383, 388 (D.D.C. 2010) ("The plaintiff bears the

burden of proof on each element of Rule 23." (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997))). District courts exercise broad discretion in deciding whether to certify a class. *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). Nonetheless, the Supreme Court has stated that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable[,]" and because a class action is a departure from a standard proceeding, the Court should undertake a "rigorous analysis" to ensure that a class action is appropriate under Rule 23. *Falcon*, 457 U.S. at 161; *Wal-Mart*, 564 U.S. at 351.

## ARGUMENT

Defendants do not contest that Davis's proposed class would, if certified, satisfy the numerosity requirement of Rule 23(a)(1). And while Defendants note that Davis's self-admitted difficulties with problem solving, seeking help, and trusting authority figures (Mot. at 19-20; K. Davis Decl. ¶¶ 23-26) would appear to be at odds with both his typicality as a plaintiff and his duty to "vigorously prosecute" the interests of the putative class and commitment to the role, Defendants do not take issue with the assertions of Davis and his Counsel that they are capable of doing so. The putative class, however, does not satisfy the commonality requirements of Rule 23(a), nor has Davis established common treatment as required by Rule 23(b)(2). This Court therefore should deny class certification.

## I.     The Proposed Class Does Not Satisfy Commonality

Rule 23(a)(2) requires that Davis "identify at least one question common to all members of the class." *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). To do so, "the class's claims must 'depend on a common contention,' the truth or falsity of which 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Pappas v. District of Columbia*, Civ. A. No. 19-2800 (RC), 2024 WL 1111298, at *4 (D.D.C. Mar. 14, 2024) (quoting *Wal-Mart*, 564 U.S. at 350). In other words, Davis bears the burden of establishing that there is a "common

harm suffered as a result of a policy or practice that affects each class member." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013).

While factual variations, by themselves, will not defeat commonality where there is a common question, "mere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 324 (D.D.C. 2011) (cleaned up). "[A]t a sufficient . . . level of generalization, almost any set of claims can be said to display commonality." *Love v. Johanns,* 439 F.3d 723, 729 (D.C. Cir. 2006) (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998)); *see also In re White*, 64 F.4th 302, 314 (D.C. Cir 2023) (indicating that, while a plaintiff may attempt to "define a class as all those discriminated against illegally because they are at a loss for a more specific thread to tie claims together[,] . . . Rule 23 does not allow for such a 30,000 foot view of commonality"). As the D.C. Circuit has held, in light of *Wal-Mart*, merely finding a defendant "has violated the [law] as to each class member is not enough to establish Rule 23(a) commonality … in the absence of a uniform policy or practice that affects all class members." *DL*, 713 F.3d at 128 (citing *Wal-Mart*, 564 U.S. at 350)). For this reason, "an allegation that the class members 'have all suffered a violation of the same provision of law'" is "insufficient to establish commonality given that the same provision of law 'can be violated in many [] ways.'" *Id.*at 126 (quoting *Wal-Mart*, 564 U.S. at 350). Instead, the plaintiff must "identif[y] . . . a policy or practice that affects all members of the class in the same manner" to meet Rule 23(a)'s requirement of commonality. *Id.*

The *DL* decision is particularly instructive as that case also dealt with a broad putative class based on an alleged "common" violation, there an alleged violation of the Individuals with Disabilities Education Act ("IDEA"). *See DL*, 713 F.3d at 121. The D.C. Circuit rejected the district court's certification of a class that would have covered "failures in four distinct

administrative functions," "amalgamat[ing] multiple, distinct categories of claims." *Id.* at 126 (citation omitted). The alleged harms to members of the proposed class "involve[d] different policies and practices at different stages of the [defendant's] process" and there was "no single or uniform policy or practice that bridge[d] all their claims." *Id.* at 127; *see also id.* at 128 (noting that the plaintiffs' "claims appear to be based on multiple, disparate failures to comply with the [District's] statutory child find obligations rather than a truly systemic policy or practice which affects them all") (citation omitted). There was no "common true or false question [that] c[ould] be answered for each of these . . . different claims of harm that would assist the district court in determining [the defendants'] liability as to each group" of class members. *Id.* (cleaned up).

Davis has not met his burden under Rule 23(a)(2). His legal claim is broad, encompassing alleged injuries at several distinct phases of the supervision process as carried out by two different defendants under two different legal frameworks—supervised release and parole. Not only does the putative class share no common harm, it is so broadly defined as to fracture the proposed class and prevent any resolution of a common question with a single injunction.

Davis alleges that—and the proposed class encompasses claims based on allegations that— both the Commission and CSOSA violate the Rehabilitation Act at multiple distinct phases in the supervision process: by the Commission before supervision begins, by CSOSA in the course of supervision, by CSOSA in determining when to submit alleged violation reports to the Commission, by the Commission in making determinations on whether to find violations based on the alleged violation reports submitted by the Commission, and by CSOSA following the conclusion of revocation proceedings before the Commission. Davis challenges not only the reasonable accommodation of disabilities but also the distinctly different questions of whether Defendants properly assess an individual's disabilities prior to the beginning of their supervision

and whether and when such an assessment is legally required in the first place. Moreover, the proposed class includes both supervised releasees and parolees, whose supervision circumstances differ in important ways. As one example, the Commission has very little and sometimes no notice prior to the release of a supervised releasee as opposed to the lengthier advance notice it has of the release date for parolees. *See* Helenihi Aff. ¶ 4. The feasibility of the assessment and reasonable accommodation of disabilities prior to release that Davis demands differs between these two groups in legally significant ways.

While Davis correctly notes that there is no written policy requiring assessment and accommodation of disabilities (Mot. at 17), this does not establish a common deficiency in providing such assessments and accommodations. To the contrary, the Commission has assessed and reasonably accommodated the disability-related needs of parolees and supervised releasees both in setting conditions of supervision and in evaluating alleged violations of those conditions. Helenihi Aff. ¶¶ 4-6. As a result, it is a certainty that many members of the proposed class will have no injury to allege with respect to the claims Davis seeks to bring.

Although some putative class members may well, like Davis, claim that their disabilities were not assessed and reasonably accommodated by Defendants, such claims would not exist in a common form class-wide. Each class member with a claim to raise will have different combinations of the broad range of possible allegations encompassed by the injunction and declaratory judgment Davis seeks. For example, one person may be dissatisfied with the Commission based on a perception that the Commission failed to adequately assess his disabilities before imposing general conditions of parole. Another person may never have had their supervised release revoked but may allege that CSOSA has failed to reasonably accommodate a disability in the setting of appointment times with her Community Supervision Officer. Yet another person

10

may raise a claim against both CSOSA and the Commission based on an alleged failure of CSOSA to reasonably accommodate a disability and of the Commission to account for that disability in its revocation decision.

Each of these sets of allegations is based on a separate and distinct legal theory that shares only "Defendants violated the Rehabilitation Act" as a common thread—which is insufficiently common. *DL*, 713 F.3d at 126 (quoting *Wal-Mart*, 564 U.S. at 350). In other words, resolution of each class member's claim does not "turn[] on a common question (or questions)," as Rule 23(a)(2) requires. *Brown v. District of Columbia*, 928 F.3d 1070, 1081 (D.C. Cir. 2019). Moreover, "common proof" as to one of these many questions could not "lead[] to a common answer (or answers) to [a common] question for each plaintiff" because, as explained above, the assessments and accommodations provided vary by individual based on a myriad of different factors. *Id.* And the class members have not all suffered a "common harm." *DL*, 713 F.3d at 128.

As in *DL*, Davis's putative class boils down to a "common" allegation that Defendants have violated an act of Congress. But the claims raised and the injunctive relief sought span several "distinct administrative functions" divided between two discrete Defendants who have separate roles at different stages of the supervision process. *Cf. DL*, 713 F.3d at 126. Adjudicating these claims in a single injunction would require "amalgamat[ing] multiple, distinct categories of claims." *Id.* (citation omitted). There is "no single or uniform policy or practice that bridges all the[] claims" that Davis raises. *Id.* at 127. And each class member is likely to have a different combination of concerns touching on different stages of the supervision process. "Because the class members [are] suing for injunctive relief to obtain improvements at various different stages in the delivery of [supervision], . . . [there is] no question capable of common resolution for all

class members." *In re Johnson*, 760 F.3d 66, 73 (D.C. Cir. 2014) (elaborating on the rationale of the *DL* decision).

In sum, Davis has not established commonality, and he thus has not satisfied Rule 23(a)(2). This Court should therefore deny Plaintiff's motion to certify.

## II.    **Davis Is Not a Typical Class Member**

Rule 23(a)(3) requires that the class representative have claims typical of those of the putative class. In order "to justify a departure from" the general rule that litigation should be conducted on behalf of the named parties only, "a class representative must . . . possess the same interest and suffer the same injury as the class members." *Wal-Mart*, 564 U.S. at 348-49 (2011) (citation and internal quotation marks omitted). Leaving aside the fact that—as established above—the class itself does not have claims that are common to the putative class, Davis's claims are particularly atypical.

First, the proposed class consists of "all people with a disability who are on or will be on parole or supervised release in the District of Columbia under the Commission's and CSOSA's supervision[.]" Mot. at 10. But there are individuals—some of whom may be disabled—who are on parole in the District of Columbia under the Commission's supervision but not CSOSA's: federal parolees who committed U.S. Code offenses before November 1, 1987. Those individuals are supervised by the U.S. Probation Office at the Commission's request. *See* 18 U.S.C. § 3655; *see also* D.C. Code 24-133 (CSOSA supervises only D.C. Code offenders). To the extent the putative class extends to federal parolees—and it is far from clear that they are excluded from the class definition—Davis is not a typical class member because he does not represent federal parolees.

Second, as Davis points out (Mot. at 18), many individuals in supervision have the opportunity to have their supervision terminated early if they successfully comply with their

supervision requirements.  *See* 28 C.F.R. § 2.95.  For these individuals, a failure to comply with their supervision requirements can result in more time spent in supervision, including possibly an extension of the supervised release terms.  *See* 28 C.F.R. § 2.210.

Davis, on the other hand, is subject to a lifetime parole term.  Compl. ¶ 96.  Although it is possible for him to have his supervision terminated eventually, he is not typical of much of the putative class, especially as future class members—who are not subject to parole but instead to supervised release—cannot face a lifetime parole term.  *See* D.C. Code § 24-403.01(b).

In short, Davis is not a typical class member, and this Court should therefore deny his motion to certify the class.

III.    **The Proposed Class Does Not Satisfy Rule 23(b)(2)**

Even if Davis were able to establish commonality—which he cannot—denial of his motion to certify the class would still be appropriate.  It is not enough that a plaintiff establish that a putative class meets the four requirements of Rule 23(a); class actions are only available if a plaintiff can additionally satisfy one of the approved types of class action set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b).  Here, Davis asserts (Mot. at 34) that his putative class qualifies for certification under Rule 23(b)(2), but he fails to so establish.  Class certification therefore is not appropriate.

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). According to this rule, "two elements must exist: (1) the defendant's action or refusal to act must be 'generally applicable to the class,' and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006) (citing 7AA Charles Allen Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1775 (3d ed.

2006)); *see also Bynum v. District of Columbia*, 217 F.R.D. 43, 48 (D.D.C. 2003); *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016), *on reconsideration in part*, 200 F. Supp. 3d 217 (D.D.C. 2016). "[T]o maintain certification under Rule 23(b)(2), the claims must relate to 'application of a common policy.'" *Lightfoot*, 273 F.R.D. at 337 (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999)). In other words, Rule 23(b)(2) classes are intended to address "class-wide injur[ies]." *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002).

Davis has not met his burden of establishing that the putative class meets this standard, as he has not demonstrated any action or failure of action by Defendants that applies generally to the class, nor has he demonstrated a class-wide injury.

As a starting point, Davis is not challenging any affirmative action of Defendants, but rather, he challenges the absence of any written policies, procedures, or guidelines by Defendants governing the assessment and provision of reasonable accommodations for individuals on supervision. *See* Mot. at 34-35. But Davis's allegations fall short and are premised on the simple fact that there is no written statement, while failing to show that there is a uniform failing by Defendants. Defendants do, in fact, assess and reasonably accommodate known disabilities, subject to the limitations Defendants face in monitoring and supervising individuals. Especially in the current framework of supervised release, for example, the Commission typically has no notice at all of the grant of release to the individual. Helenihi Aff. ¶ 4.

While an individual is free to raise a request for reasonable accommodation or even provide notice of their disability to the Commission at any time, the Commission itself often lacks any meaningful manner by which to obtain that information on its own, especially prior to setting conditions of supervision. *See id*. Nevertheless, the Commission has and continues to assess information about individuals as it becomes available, whether from the individual themselves or

from CSOSA; the Commission has and continues to decline to pursue further proceedings based on those assessments. *See id.* ¶¶ 4-6.  CSOSA also instructs its officers to consider the individuals they supervise and work to ensure that the individuals are able to successfully comply with the conditions of release.  In other words, there is no class-wide refusal to assess and reasonably accommodate disabilities; there is no class-wide inaction that meets the requirements of Rule 23(b)(2).  To the contrary, Defendants address disabilities on an individualized basis, just as they do other individual circumstances affecting each parolee or supervised releasee with whom they interact.

Similarly, and as a result, there is no class-wide injury under the Rehabilitation Act. Rather, many members of the proposed class have no injury to allege whatsoever, having had their disabilities reasonably accommodated by Defendants.  As explained in greater detail in Section I, *supra*, the factual differences between and among the members of the putative class are so great as to defeat commonality, and they similarly defeat any easy definition of a class-wide injury.

Accordingly, Davis has failed to meet the Rule 23(b)(2) standards, and this Court should deny class certification.

*    *    *

**CONCLUSION**

For the foregoing reasons, Defendants respectfully ask that this Court deny Davis's motion

for class certification and order that this matter proceed to discovery with only the sole remaining

plaintiff and his claims.

Dated: November 4, 2024
      Washington, DC                Respectfully submitted,

                                      MATTHEW M. GRAVES, D.C. Bar No. 481052
                                      United States Attorney

                                      BRIAN P. HUDAK
                                      Chief, Civil Division

                          By:     */s/ Kartik N. Venguswamy*
                                        KARTIK N. VENGUSWAMY
                                          D.C. Bar No. 983326
                                    Assistant United States Attorney
                                      601 D Street, NW
                                      Washington, D.C. 20530
                                      (202) 252-1790
                                      kartik.venguswamy@usdoj.gov

                                      *Attorneys for the United States of America*