# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM MATHIS and KENNEDY DAVIS,
*individually and on behalf of all others*
*similarly situated*

Plaintiffs,

v.

UNITED STATES PAROLE COMMISSION,
*et al.*

Defendants.

Case No. 1:24-cv-01312-TNM

## REPLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION
## FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

    A.  The Proposed Class Satisfies The Commonality Requirement. ............................3

        1.  Defendants' Merits Arguments Are Incorrect And Irrelevant....................4

        2.  Mr. Davis Challenges A Uniform Policy Or Practice Of Non-Accommodation That Affects All Class Members.....................................7

    B.  Mr. Davis Satisfies The Typicality Requirement. ...............................................15

    C.  Class Certification Is Appropriate Under Rule 23(b)(2)......................................16

III.  CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. Choate*,
469 U.S. 287 (1985)..................................................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................1, 6

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ..................................................................................12

\*Brown v. District of Columbia,
928 F.3d 1070 (D.C. Cir. 2019) ..............................................................................11

*Cobb v. Georgia Department of Community Supervision*,
No. 1:19-cv-03285, 2022 WL 22865202 (N.D. Ga. Oct. 13, 2022) .......................12

*D.L. v. District of Columbia* (*D.L. I*),
277 F.R.D. 38 (D.D.C. 2011), *vacated and remanded*, 713 F.3d 120 (D.C. Cir.
2013) ..........................................................................................................................7

\*D.L. v. District of Columbia (D.L. II),
713 F.3d 120 (D.C. Cir. 2013) ...................................................................7, 8, 9, 10

\*D.L. v. District of Columbia (D.L. III),
302 F.R.D. 1 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)....................7, 14

\*D.L. v. District of Columbia (D.L. IV), 860 F.3d 713 (D.C. Cir. 2017) ...................17

*Drasek v. Burwell*,
121 F. Supp. 3d 143 (D.D.C. 2015) .........................................................................14

*Dunn v. Dunn*,
318 F.R.D. 652 (M.D. Ala. 2016) ......................................................................12, 13

\*In re District of Columbia,
792 F.3d 96 (D.C. Cir. 2015) ..............................................................................9, 11

\*In re Johnson,
760 F.3d 66 (D.C. Cir. 2014) ..................................................................................11

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ..............................................................................16

*Pappas v. District of Columbia*,
No. 19-cv-2800, 2024 WL 1111298 (D.D.C. Mar. 14, 2024) ................................7

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .................................................................................6

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) .......................................................................15

\*Thorpe v. District of Columbia,
303 F.R.D. 120 (D.D.C. 2014), *aff'd sub nom.*, *Brown v. District of Columbia*,
928 F.3d 1070 (D.C. Cir. 2019) .....................................................................10, 11

*Wagner v. Taylor*,
836 F.2d 578 (D.C. Cir. 1987) .............................................................................16

\*Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338 (2011) .....................................................................................1, 8, 14

## STATUTES

29 U.S.C. § 794(a) ..........................................................................................................9

D.C. Code § 24-133(c)(2) ...........................................................................................15

D.C. Code § 24.403.01...................................................................................................14

## REGULATIONS

28 C.F.R.
§ 2.95 ................................................................................................................2, 15
§ 2.95(b) .................................................................................................................15
§ 2.95(d) .................................................................................................................15
§ 2.208 ....................................................................................................................15
§ 2.208(b)-(c) .........................................................................................................15

## OTHER AUTHORITIES

Def.'s Opp. to Pls.' Renewed Mot. for Class Certification, ECF No. 106, *Thorpe
v. District of Columbia*, No. 10-2250 (D.D.C. June 4, 2013) ................................10

# I.    INTRODUCTION

For the first time in this case, Defendants assert that the Commission (but not CSOSA) has a policy of accommodating individuals with disabilities. That merits argument is irrelevant at the class certification stage and wrong in any event. As Defendants' own admissions reveal, Defendants have no "official, standardized system" for assessing whether and what types of accommodations people may require. Dkt. 38 ("Answer") ¶¶ 149-50. Defendants likewise concede they have no "guidance, instructions, or policies requiring assessing people's disability-related accommodation needs when initially setting supervision requirements, requiring provision of reasonable accommodations for people's disabilities as they become known, or providing a means by which people with disabilities can request reasonable accommodations." *Id.* ¶ 150. Nevertheless, Defendants insist that the Commission (but again, not CSOSA) "take[s] known disabilities into consideration" when "imposing conditions" of supervision and "evaluating alleged violations of those conditions." Dkt. 42 ("Opp.") at 1. Defendants' argument boils down to the incredible assertion that the Commission has a policy of accommodating disabilities but has never gotten around to writing it down, has never told its employees or CSOSA about it, and has zero examples of it being applied in practice.

But even if that claim was credible, it would not defeat class certification. Rule 23 requires showing that there is at least one common question, "not that th[e] question[] will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[E]ven a single common question will do."). Thus, even if Defendants were right that they regularly accommodate disabilities (and they are not), that would just mean that the class members' claims "fail in unison"—further underscoring the appropriateness of class certification. *Amgen*, 568 U.S. at 460.

Defendants also attack commonality on the ground that the supervision process can be sliced and diced into multiple stages, and that some class members purportedly are not injured at later stages of the process because they are never incarcerated pending revocation proceedings or their supervision is never revoked. But this boils down to the same flawed argument that Defendants made at the preliminary injunction stage and that this Court already rejected. Rather than address the denial of equal treatment, Defendants focus on the downstream consequences of that unequal treatment like arrest, incarceration, and prolonged supervision. Dkt. 31 ("PI Op.") at 26. While those are serious harms that impact many class members, this Court has recognized that the relevant injury under the Rehabilitation Act is "[t]he 'denial of equal treatment' *itself*," *id.*— an injury that *all* class members experience as soon as they are subjected to discriminatory conditions of supervision that fail to accommodate their disabilities. Defendants' system-wide policy and practice of imposing conditions without providing reasonable accommodations thus affects all class members and raises common questions apt to drive the resolution of this case.

Defendants' objections to Mr. Davis's typicality are equally flawed. Defendants contend that Mr. Davis is not a typical representative of a class that includes federal parolees, but, as this Court has already acknowledged, "this case only concerns individuals who are on supervision for violating D.C. Code, not federal law." *Id.* at 2 n.1. Defendants further contend that Mr. Davis is not a typical representative because he is on lifetime parole and therefore is not subject to early termination of supervision. But contrary to Defendants' assertion, early termination is available to *all* people on supervision—including those, like Mr. Davis, serving lifetime parole. *See* 28 C.F.R. § 2.95. Regardless, any factual difference with respect to the length of class members' supervision would not speak to whether Mr. Davis's *Rehabilitation Act claim* is typical, which is the relevant

inquiry for Rule 23(a) purposes. As above, this objection reveals Defendants' same misguided focus on downstream consequences that this Court has already rejected.

Finally, Defendants contend that the class does not satisfy Rule 23(b)(2) because there is no class-wide injury that could be resolved in a single injunction. That argument fails for the same reasons as Defendants' commonality arguments. Indeed, this Court has already granted a single injunction requiring Defendants to accommodate Mr. Mathis and Mr. Davis—two men with different disabilities who suffered distinct downstream harms as a result of Defendants' failure to accommodate. *See* Dkt. 32 ("PI Order"). That injunction proves that class-wide relief is possible through the adoption of a single system of accommodation. For all those reasons, the Court should certify the proposed class.

## II.    ARGUMENT

Defendants' opposition narrows the issues subject to dispute before this Court. Defendants do not dispute that the proposed class satisfies Rule 23(a)'s numerosity and adequacy requirements, nor could they do so. And while they do dispute whether the commonality, typicality, and single-injunction requirements are met, Defendants do not meaningfully engage with the cases and arguments in Mr. Davis's motion. This omission is telling: Defendants have no response to the numerous decisions in this Circuit and beyond certifying substantially similar classes raising system-wide claims of disability discrimination. This Court should grant the motion and certify the class.

### A.    The Proposed Class Satisfies The Commonality Requirement.

Defendants primarily contend that the proposed class fails Rule 23(a)'s commonality requirement because (1) many class members are not injured since the Commission accommodates their disabilities; and (2) the proposed class challenges multiple, discrete failures during the supervision process rather than a uniform policy or practice. Neither is correct.

## 1.    Defendants' Merits Arguments Are Incorrect And Irrelevant.

Defendants' contention that Mr. Davis has failed to "establish a common deficiency in providing . . . assessments and accommodations" of disabilities is both incorrect and irrelevant. Opp. at 10. It is incorrect because Mr. Davis has provided substantial evidence that Defendants fail to accommodate class members' disabilities throughout the supervision process. *See* Dkt. 40 ("Mot.") at 3-13 (cataloguing evidence of Defendants' system-wide failure to assess and accommodate disabilities). And it is irrelevant because Mr. Davis does not bear the burden of proving his case on the merits in order to obtain class certification.

**a.** At the outset, Defendants' merits arguments fail even on their own terms. Begin with Defendants' omission of any argument that CSOSA does not discriminate. The most Defendants say is that CSOSA's Community Supervision Officers ("CSOs") have "discretion" and "authority" to "reasonably accommodate the supervised individual as necessary." Opp. at 2. But Defendants offer *no evidence* that CSOSA trains or instructs its CSOs to accommodate disabilities, or that these CSOs in fact exercise their discretion to do so. And they do not. Edmondson Decl. ¶ 16. The clear implication from Defendants' failure to defend CSOSA's policies and practices is that CSOSA is discriminating against individuals with disabilities when setting and enforcing their conditions of supervision.

Meanwhile, Defendants' belated and conclusory contention that the Commission "take[s] known disabilities into consideration" is undercut at every turn by Defendants' own admissions. Opp. at 1. Defendants concede that they have "no written policy requiring assessment and accommodation of disabilities." *Id.* at 10; Answer ¶¶ 42-43 (similar concessions). The idea that the Commission has a policy of providing accommodations that it has never written down and cannot support with any actual examples is not convincing.

The Commission further asserts that it "lacks any meaningful manner by which to obtain" disability information in the first place, but suggests that individuals are "free" to provide such information on their own. Opp. at 14. Yet at no point does the Commission solicit information regarding an individual's disabilities. *See* Answer ¶¶ 149-50 (admitting that there is no "official, standardized system" for requesting accommodations). Moreover, as Defendants admitted in their Answer, "individuals on supervision and their attorneys are not always present when conditions of parole or supervised release are imposed," and even if they were, Defendants have no policy of notifying individuals of their rights under the Rehabilitation Act. *Id.* ¶¶ 44-45; P. Davis Decl. Ex. 1 (CSOSA 6/23 FOIA Response) at 2. Worse still, even if a person were to request accommodations then, it would not matter because Defendants admitted they have "no policy requiring the consideration of disabilities when supervision requirements are first imposed." Answer ¶¶ 42-43.

Finally, Defendants assert that the Commission sometimes declines to pursue revocation in favor of recommending disability-related accommodations and "generally reinstates" to supervision individuals whose disability "prevented or hindered [them] from satisfying the conditions" of supervision. Helenihi Decl. ¶ 5-6; *see* Opp. at 3-5. But again, Defendants offer no actual examples of this ever occurring. And the evidence belies this assertion. In this very case, the Commission incarcerated both Mr. Davis and Mr. Mathis for alleged violations, revoked Mr. Davis's supervision, and then released both of them back on to supervision "without any accommodations," despite repeatedly being informed of their disabilities. PI Op. at 5; *see* K. Davis Decl. ¶¶ 27-28. Mr. Davis's and Mr. Mathis's experiences are standard practice for Defendants. The Commission regularly initiates revocation proceedings and then releases individuals back to supervision "without any accommodation after explicitly acknowledging that [their] disabilities

will make compliance with supervision impossible." Edmondson Decl. ¶ 37. For example, despite "explicitly acknowledg[ing]" that a paralyzed person was "medically unable to comply with" the terms of his supervision, the Commission incarcerated that person for several weeks for noncompliance and then reimposed the same conditions upon his release. *Id.*; *see also id.* ¶ 35 (same for person who suffered from "extreme nerve pain in his back," resulting in difficulty walking to supervision-mandated meetings).

For all those reasons, Defendants' late-breaking and threadbare assertion that the Commission does accommodate individuals on an ad hoc basis is insufficient to negate Mr. Davis's proof of a common policy or practice of non-accommodation, and by no means shows "a certainty that many members of the proposed class will have no injury." Opp. at 10.

**b.** Regardless, even if Defendants were correct that they regularly accommodate individuals' disabilities, that is a merits argument that does not defeat class certification. "[A] court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim," but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465-66 (citation omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Put another way, "the class certification hearing is not a dress rehearsal of the trial on the merits." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014). Therefore, even if Defendants were right that they have a policy of accommodating disabilities (and they are not), that would simply mean that all class members' claims "fail in unison." *Amgen*, 568 U.S. at 460. "Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion," not "in deciding whether to certify a proposed class." *Id.* at 470.

Cases applying this principle are legion, but *Pappas v. District of Columbia* is particularly on point. No. 19-cv-2800, 2024 WL 1111298 (D.D.C. Mar. 14, 2024). There, the defendant argued that "it did not maintain the discriminatory policy that Plaintiffs sa[id] it did and that, in fact, it did assess whether [the plaintiffs] could be accommodated." *Id.* at *9. Far from defeating commonality, this merits argument underscored the propriety of "class-wide adjudication" to address a common question much like the one here—whether the defendant maintained a discriminatory policy that failed to assess whether persons with disabilities "could be accommodated." *Id.* Accordingly, as in *Pappas*, Defendants' merits arguments do not defeat class certification.

### 2. Mr. Davis Challenges A Uniform Policy Or Practice Of Non-Accommodation That Affects All Class Members.

Defendants' attempt to challenge commonality by slicing and dicing the supervision process likewise fails because Mr. Davis challenges a uniform policy and practice of imposing supervision conditions without considering reasonable accommodations that affects all class members.

Defendants' argument turns on an analogy to *D.L. v. District of Columbia* (*D.L. II*), 713 F.3d 120, 121 (D.C. Cir. 2013), but that case is far afield. In the *D.L.* litigation, the plaintiffs challenged the District of Columbia's failure to comply with four "specific statutory obligation[s]" under the Individuals with Disabilities Education Act ("IDEA"). *D.L. v. District of Columbia* (*D.L. III*), 302 F.R.D. 1, 13 (D.D.C. 2013), *aff'd*, *D.L. v. District of Columbia* (*D.L. IV*), 860 F.3d 713 (D.C. Cir. 2017). The plaintiffs sought and obtained certification to proceed as a single class of D.C. students aged three to five who had been denied a free appropriate public education. *D.L. v. District of Columbia* (*D.L. I*), 277 F.R.D. 38, 41 (D.D.C. 2011), *vacated and remanded*, 713 F.3d 120 (D.C. Cir. 2013). After the Supreme Court's decision in *Wal-Mart*, the D.C Circuit held that

class certification was not appropriate because there was no common question that would generate a "common answer[] apt to drive the resolution of the litigation" for the entire class. *D.L. II*, 713 F.3d at 125-29 (quoting *Wal-Mart*, 564 U.S. at 350). As the D.C. Circuit recognized, class members were allegedly deprived of four distinct statutory protections at different stages of the IDEA process. Specifically, some class members were never identified as needing individual education plans in the first place. *Id.* at 128. Others were identified as needing such plans but were denied "adequate and timely education placements." *Id.* And still others were identified and provided adequate and timely placements but were denied "a smooth and effective transition from early intervention programs to preschool programs." *Id.* Because the plaintiffs were all harmed in different ways by "different policies and practices at different stages" of the IDEA process, there was no common question whose determination would "resolve an issue that [was] central to the validity of each one of the [plaintiffs'] claims in one stroke." *Id.* at 125-29.

By contrast here, every member of the class is injured in the same way by the same policy. There are not four separate statutory violations and four separate harms, as in *D.L.* Instead, there is a single violation and a single harm based on the systemic imposition of supervision conditions without any process for assessing or providing accommodations. Nor can Defendants contort this systemic failure into separate legal harms or violations. As this Court recognized in granting a preliminary injunction, plaintiffs are injured—irreparably so—as soon as they are forced to "comply[] with supervision requirements that do not reasonably accommodate their disabilities." PI Op. at 26. That injury flows from the imposition of discriminatory supervision conditions, and it exists regardless of whether plaintiffs suffer "further downstream harms," such as revocation or incarceration pending a revocation hearing. *Id.* Defendants' argument amounts to the assertion that because Plaintiffs may also suffer *additional* harms—above and beyond being subjected to

supervision conditions that pose a discriminatory obstacle to success—commonality is missing. But commonality requires only one common question. And here, there is more than one— including (among others) whether Defendants have a policy of imposing supervision conditions without a process for assessing the need for and providing reasonable accommodations; and whether this systemic failure violates the Rehabilitation Act. Mot. at 19. As the D.C. Circuit explained in denying interlocutory review of a similar disability-rights class and distinguishing *D.L.*, these "alleged deficiencies" in a system of accommodations are "the sort of systemic failure that might constitute a policy or practice affecting all members of the class in the manner Wal-Mart requires for certification." *In re District of Columbia*, 792 F.3d 96, 100 (D.C. Cir. 2015).

At bottom, Defendants' commonality objection rests on the same flawed argument Defendants made, and this Court rejected, at the preliminary injunction stage. Rather than address the denial of equal treatment that all class members experience, Defendants focus on the "downstream harms" caused by that denial of equal treatment. PI Op. at 11-12. But as this Court has explained, the essential harm under the Rehabilitation Act is the "'discrimination' itself, not the consequences it causes." *Id.* at 11 (quoting 29 U.S.C. § 794(a)); *see also id.* at 26 ("The 'denial of equal treatment' *itself* counts as an injury . . . ." (citation omitted)). Nor does Defendants' failure to accommodate disabilities at "different stages of the supervision process" undermine commonality; rather, it evidences their general policy of not accommodating people who are on supervision at *any* stage. Opp. at 11. Unlike in *D.L.* where class members were injured by "different policies and practices," ranging from untimely education placement to denial of a "smooth and effective transition" between programs, *D.L. II*, 713 F.3d at 127-28, all class members here are injured by the same unlawful policy of imposing supervision conditions without accommodating disabilities. Because each class member suffers the same harm by being subjected

to conditions that do not accommodate them, certification of a single class is appropriate. *Cf. D.L. II*, 713 F.3d at 131 (Edwards, J., concurring) ("[I]f the District of Columbia ha[d] adopted a 'stopped at the door' policy or practice that effectively block[ed] disabled children from . . . being considered for IDEA benefits," certification of a single class would be appropriate).

This Court's decision in *Thorpe* and the D.C. Circuit's affirmance of it underscore this point. *Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014), *aff'd sub nom.*, *Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019). There, the district court granted certification of a class of people with disabilities who needed transition assistance from D.C. Medicaid-funded nursing facilities to long-term care services in the community. *Id.* at 135. The district court concluded that commonality was satisfied because "[t]he gravamen of plaintiffs' case [was] their contention that the District [was] violating" a statutory mandate to integrate such persons into the community and was "injuring each and every class member by virtue of its failure to implement an effective system of transition assistance." *Id.* at 146. The court acknowledged that there were multiple "components of an effective system of transition assistance," including providing "individual assessments upon admission [to nursing facilities] and periodically thereafter," providing "accurate information about available community-based services and eligibility requirements for those services," and providing "comprehensive written discharge/transition plans." *Id.* at 148. Due to those multiple components, the District argued that class certification was inappropriate under *D.L. See* Def.'s Opp. to Pls.' Renewed Mot. for Class Certification at 18-20, ECF No. 106, *Thorpe v. District of Columbia*, No. 10-2250 (D.D.C. June 4, 2013). But the district court disagreed, distinguishing *D.L.* on the ground that the plaintiffs in *Thorpe* had adequately identified a "uniform policy or practice" of providing ineffective transition assistance

altogether, which had the effect of unlawfully segregating D.C. residents with disabilities from the larger community. *Thorpe*, 303 F.R.D. at 145-47 & n.59.

The D.C. Circuit rejected the District's request for interlocutory review of this decision, and later upheld class certification on appeal from final judgment. *See In re District of Columbia*, 792 F.3d 96; *Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019). As the D.C. Circuit explained, "common proof w[ould] establish whether the District's [transition-assistance] plan is 'comprehensive' and 'effectively working' and whether its waiting list for transition to the community 'moves at a reasonable pace.'" *Brown*, 928 F.3d at 1082. Thus, although the transition process could theoretically be broken into multiple stages, class certification was appropriate because issues central to the validity of the plaintiffs' claims—the adequacy of the District's transition system—could be resolved in a single stroke.

Defendants' simplistic view of *D.L.*, which would appear to prohibit plaintiffs from challenging any system that could be broken into multiple steps, is also inconsistent with the D.C. Circuit's decision in *In re Johnson*, 760 F.3d 66, 73 (D.C. Cir. 2014). There, the Court declined to grant the Government's petition for interlocutory appeal of a class-certification decision involving a class of former State Department employees who were denied promotions based on their race. The Government sought to "differentiate class members by the stage of the promotion process in which they may have encountered discrimination." *In re Johnson*, 760 F.3d at 73. The D.C. Circuit rejected that argument, explaining that such distinctions "are not indicated by *D.L.* because all the class members here are seeking the same relief" for discrimination occurring under a single promotion policy. *Id.* The same is true here. All class members are seeking the same relief—a system of reasonable accommodation—as against a single policy of imposing supervision conditions without considering such accommodations.

It should thus come as no surprise that, in addition to the cases in this Circuit discussed above, numerous courts have certified similar classes challenging defendants' systemic failures to accommodate their disabilities during multistage processes over objections that commonality was lacking. *See* Mot. at 21-22 (collecting cases). In *Armstrong v. Davis*, for example, the Ninth Circuit affirmed certification of a class of individuals with disabilities who had been denied accommodations at their "parole consideration" and "parole revocation" hearings, as well as at "events related to the hearings," such as "screening offers, psychological evaluations, central file reviews and administrative appeals." 275 F.3d 849, 858, 867-70 (9th Cir. 2001). Although the plaintiffs' claims spanned multiple aspects of the parole process, including the "notification, hearing, and appeals process," certification was appropriate because Defendants failed to "provide effective communications" and accessible facilities at each stage. *Id.* at 870.

Similarly, in *Cobb v. Georgia Department of Community Supervision*, a Georgia district court found commonality satisfied for a class of deaf and hard-of-hearing individuals on parole or probation in Georgia. No. 1:19-cv-03285, 2022 WL 22865202, at *1-4, *13-14 (N.D. Ga. Oct. 13, 2022). That class challenged the defendant's failure to offer adequate communication aides and other reasonable accommodations at multiple stages of the supervision process, "including initial intake, home visits, employment visits, random drugs screens . . . , and counseling." *Id.* at *2. Nevertheless, the district court concluded that commonality was met because plaintiffs challenged a uniform policy of non-accommodation.

And in *Dunn v. Dunn*, a district court in Alabama certified a class of incarcerated people with disabilities over a commonality objection, emphasizing that the plaintiffs' central claim was that defendants had failed to implement a "system that would have the effect of ensuring that [class members] were appropriately accommodated," or, in other words, had "failed to remedy an

inadequate system that ha[d] the effect of discriminating against [class members] by failing to accommodate their disabilities." 318 F.R.D. 652, 663 (M.D. Ala. 2016). As the court explained, the class raised multiple common questions regarding "whether the Department ha[d] employed methods of administration that have the effect of discriminating against prisoners with disabilities," including (1) "employing no system or an inadequate system for identifying and tracking prisoners with disabilities," (2) "employing no system or an inadequate system for prisoners to request accommodations and submit grievances regarding non-accommodation," (3) "failing to train staff regarding the requirements of the ADA," and (4) "failing to promulgate policies and procedures regarding the treatment of prisoners with disabilities." *Id.* at 665.

Mr. Davis discussed these cases in his motion for class certification, Mot. at 19-22; tellingly, Defendants made no effort to respond. For all the same reasons that class certification was appropriate in those cases, it is appropriate here.

Finally, to the extent Defendants contend that class certification is not warranted because this case involves two types of supervision (parole and supervised release) and two agencies (the Commission and CSOSA), Opp. at 9-10, those arguments fail too.

As to the former, Defendants never identify any meaningful difference between these two types of supervision. Defendants contend that the Commission has little to no notice of the release date for individuals on supervised release, as compared to individuals on parole. Opp. at 10; Helenihi Decl. ¶ 4. But Defendants do not explain why this lack of advance notice, even if true, prevents them from providing accommodations. Nor do Defendants assert that the Commission—a governmental agency that regularly coordinates with the Bureau of Prisons—is incapable of obtaining sufficient notice for individuals on supervised release. That is for good reason: A person's supervised release date is determined by the length of imprisonment to which they were

sentenced minus any good time credits they earned, *see* D.C. Code § 24.403.01—information that the Commission either has or could obtain from other entities.

As for the latter, Defendants are "two closely-related agencies" that work together to enforce a singular system of supervision. *See D.L. III*, 302 F.R.D. at 13 (making similar point as to District of Columbia Public Schools and the Office of the State Superintendent of Education). They jointly impose conditions of supervision, with the Commission setting high-level conditions and CSOSA adding details to them. Helenihi Decl. ¶ 3. They then jointly enforce those conditions, with CSOSA recommending revocation to the Commission and the Commission determining whether revocation is appropriate. *Id.* This case is thus a far cry from the thousands of managers at thousands of stores nationwide whose discretionary employment decisions were at issue in *Wal-Mart*. In *Wal-Mart*, the fact that pay and promotion policies were left to each individual manager in his or her own discretion posed a problem for commonality due to Title VII's intent element. *Wal-Mart*, 564 U.S. at 352. "Without some glue holding the alleged *reasons* for all those decisions together, it [was] impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352. But unlike Title VII, the Rehabilitation Act contains no intent element. On the contrary, Congress recognized in enacting the Rehabilitation Act that disability discrimination is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985); *Drasek v. Burwell*, 121 F. Supp. 3d 143, 155 (D.D.C. 2015) ("The failure . . . to provide a reasonable accommodation" under the Rehabilitation Act "is, essentially, a strict liability violation . . . ."). For that reason, the fact that two agencies are involved in this case is not a reason to deny certification—particularly when one of them (CSOSA) has put forward no evidence at all disputing commonality.

### B.    Mr. Davis Satisfies The Typicality Requirement.

Defendants argue that Mr. Davis's claims are not typical of the class because (1) he does not represent federal parolees (individuals who committed U.S. Code offenses before November 1, 1987); and (2) he is subject to lifetime parole. Opp. at 12-13. Neither defeats typicality.

First, as this Court has already recognized, "this case only concerns individuals who are on supervision for violating D.C. Code, not federal law." PI Op. at 2 n.1. The proposed class definition covers people with disabilities who are or will be "under the Commission's *and* CSOSA's supervision," not the Commission's *or* CSOSA's supervision. Mot. at 1 (emphasis added). And as Defendants note, federal parolees are not under CSOSA's supervision. Opp. at 12; see D.C. Code § 24-133(c)(2) (describing CSOSA's authority). Accordingly, federal parolees are excluded from the class definition, so there can be no typicality problem with respect to them.

Second, the fact that Mr. Davis is subject to "lifetime" parole does not defeat typicality. Contrary to Defendants' suggestion, early termination is available to *all* people on supervision— including those, like Mr. Davis, serving lifetime parole. *See* 28 C.F.R. § 2.95 (parole); *see also* 28 C.F.R. § 2.208 (supervised release). Indeed, the law states that the Commission "shall" review the need for continued supervision for both individuals on supervised release and individuals on parole after the first two years of supervision, but that clock restarts if supervision is revoked. 28 C.F.R. §§ 2.95(b), (d); 2.208(b)-(c). Therefore, revocation can "result in more time spent on supervision" for both individuals on supervised release and those on parole. Opp. at 13.

But even if Defendants were right on the facts, it would not undermine typicality. Typicality turns on whether a named plaintiff's *claims* are similar to the *claims* of other class members, not on whether the named plaintiff is identical to other class members in all respects. *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010) ("[T]ypicality refers to the nature of the claims of the representative, not [his] individual characteristics.") (citation

omitted). For that reason, merely pointing out "factual variations" between the named plaintiff's experience and that of other class members is insufficient. *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (citation omitted). So long as the plaintiffs' claims all arise from a "unitary course of conduct" or share "the same legal or remedial theory," typicality is satisfied. *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). As Plaintiffs have explained, Mr. Davis's and the proposed class members' claims arise from a "unitary course of conduct": Defendants' systemic failure to accommodate. Mot. at 22. And they share "the same legal or remedial theory": Defendants have violated the Rehabilitation Act by systematically failing to provide disability-related accommodations and thereby depriving class members of an equal opportunity to succeed on supervision. *Id.* Ultimately, Defendants' objection to Mr. Davis's typicality turns on the same misguided focus on the downstream consequences of Defendants' failure to accommodate, such as prolonged supervision, rather than on the denial of equal treatment itself. As explained above, that focus is misplaced. *See supra* at 9-10. Because Mr. Davis and class members all suffer the same harm and share the same legal claims, typicality is satisfied.

### C.    Class Certification Is Appropriate Under Rule 23(b)(2).

Finally, class certification is appropriate under Rule 23(b)(2). Defendants argue that Mr. Davis "has not demonstrated any action or failure of action by Defendants that applies generally to the class, nor has he demonstrated a class-wide injury." Opp. at 14. That is the same argument Defendants made with respect to commonality, and it fails for the reasons discussed above. Moreover, the Court already granted a single preliminary injunction that applied to multiple plaintiffs—who had different types of disabilities and suffered distinct downstream harms from Defendants' failure to accommodate—underscoring that class-wide relief is available here. *See* PI Order.

As the D.C. Circuit has recognized, "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *D.L. IV*, 860 F.3d at 726. That fits this case to a tee. Defendants' systematic policy and practice of not accommodating individuals' disabilities throughout supervision demands class-wide injunctive relief. This Court should certify the class.

## III.     CONCLUSION

For the foregoing reasons, the Court should grant the motion for class certification and appointment of class counsel.

Dated: November 18, 2024                                  Respectfully submitted,

ALLISON FRANKEL (*Pro Hac Vice*)
afrankel@aclu.org
ASHIKA VERRIEST
D.C. Bar No. 90001468
averriest@aclu.org
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
Tel.: (617) 650-7741

SCOTT MICHELMAN
D.C. Bar No. 1006945
smichelman@acludc.org
MICHAEL PERLOFF
D.C. Bar No. 1601047
mperloff@acludc.org
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF THE DISTRICT OF
    COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel.: (202) 457-0800

/s/ Peter E. Davis
HANNA M. PERRY
D.C. Bar No. 90003756
hperry@pdsdc.org
ZOÉ FRIEDLAND
D.C. Bar No. 1781910
zfriedland@pdsdc.org
PUBLIC DEFENDER SERVICE FOR THE
    DISTRICT OF COLUMBIA
633 3rd Street NW
Washington, D.C. 20004
Tel.: (202) 579-0633

SAMIR DEGER-SEN
D.C. Bar No. 1510881
samir.deger-sen@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel.: (212) 906-1200
Fax: (212) 751-4864

PETER E. DAVIS
D.C. Bar No. 1686093
peter.davis@lw.com
CHRISTINE C. SMITH
D.C. Bar No. 1658087
christine.smith@lw.com
LIA BARRETT

D.C. Bar No. 90008536
lia.barrett@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Plaintiff and the Proposed Class*