UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNEDY DAVIS, et al.,

*Plaintiffs*,

v.

U.S. PAROLE COMMISSION, et al.,

*Defendants*.

Civ. Action No. 24-1312 (TNM)

**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Contents

Introduction ........................................................................................................ 1

Argument ........................................................................................................ 3

I. Plaintiffs' Rehabilitation Act claim fails because there is no redressable relief available. ........................................................................................................ 3

A. Plaintiffs fail to articulate legally required relief. ........................................ 3

B. Plaintiffs' prescribed relief results in an undue burden. ........................................ 6

C. Plaintiffs' requested relief does not remedy the alleged violation of the Rehabilitation Act. ........................................ 7

II. Plaintiffs fail to establish any violation by the Defendants, which entitles the Defendants to summary judgment on liability. ........................................ 8

A. Plaintiffs have not properly shown that they are "disabled within the meaning of the Rehabilitation Act." ........................................ 8

B. Plaintiffs have not shown that they were "excluded from, denied the benefit of, or subject to discrimination under a program or activity" solely on the basis of a disability. ........................................ 11

C. Plaintiffs' allegations regarding the Commission fail as a matter of law. 18

D. To the extent that Plaintiffs seek affirmative identification of non-obvious disabilities by Defendants, such relief would be unduly burdensome to Defendants. ........................................ 21

III. The Testimony of Plaintiffs' Expert Should be Excluded or Afforded Little Weight, and the Court Should Consider Defendants' Declarations. .................... 22

Conclusion ........................................................................................................ 25

## TABLE OF AUTHORITIES

***Cases*** **Page(s)**

*Adams v. Rice*,
531 F.3d 936 (D.C. Cir. 2008) .......... 9, 10

*Alexander v. Choate*,
469 U.S. 287 (1985) .......... 22

*Am. Council of the Blind v. Paulson*,
525 F.3d 1256 (D.C. Cir. 2008) .......... 9

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) .......... 25

*Andrews v. Mayorkas*,
2022 WL 19297053 (D.D.C. Mar. 28, 2022) .......... 6-7, 15, 17

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*,
950 F.3d 423 (7th Cir. 2020) .......... 24

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 4, 14

*Bannister v. United States Parole Comm'n, Civ. A. No. 18-1397*
2020 WL 85229 (D.D.C. Jan. 7, 2020) .......... 4, 5

*Berrigan v. Sigler*,
499 F.2d 514 (DC Cir. 1974) .......... 11

*Bolden v. Clinton*,
847 F. Supp. 2d 28 (2012) .......... 23

*Danzer v. Norden Sys.*,
Inc, 151 F.3d 50 (2d Cir. 1998) .......... 23

*Desmond v. Mukasey*,
530 F.3d 944 (D.C. Cir. 2008) .......... 9

*Duvall v. Cnty. of Kitsap*,
260 F.3d 1124 (9th Cir. 2001) .......... 14, 15

*Fleck v. VA Office of Inspector General*,
651 F. Supp. 3d 46 (D.D.C. 2023) .......... 23

*Klayman v. Lim*,
830 Fed. Appx. 660 (D.C. Cir. 2020) .......... 6

*Norton v. Southern Utah Wilderness Alliance*
542 U.S. 55 (2004) .......... 5

*Payne v. Pauley*,
337 F.3d 767 (7th Cir. 2003) .......... 23

*Pierce*,
128 F. Supp. 3d .......... 13, 14, 15

*Robertson v. Las Animas Cnty. Sheriff's Dep't*,
500 F.3d 1185 (10th Cir. 2007) .......... 15

*Sacchetti v. Gallaudet Univ.*,
344 F. Supp. 3d 233 (D.D.C. 2018) .......... 13

*United States v. Scop*,
846 F.2d 135, 140 (2d Cir.) ..........24

*United States v. Offill*,
666 F.3d 168 (4th Cir. 2011) .......... 24

*United States v. Scop*,
846 F.2d 135 (2d Cir.) .......... 24

*United States v. Stein*,
881 F.3d 853 (11th Cir. 2018) .......... 23

*University of Texas v. Camensich*,
451 U.S. 390 (1981) .......... 11

*Updike v. Multnomah Cnty.*,
870 F.3d 939 (9th Cir. 2017) .......... 14

*Ward v. McDonald*,
762 F.3d 24 (D.C. Cir. 2014) .......... 6, 10-11, 11, 12-13, 15, 18, 20

*Winston & Strawn, LLP v. McLean*,
843 F.3d 503 (D.C. Cir. 2016) .......... 8

***Rules***

Fed. R. Evid. 407 .......... 12, 22

Rule 7(h) .......... 1

Rule 56 .......... 23

## INTRODUCTION

Although Plaintiffs' motion for summary judgment rests on a record ripe with factual disputes, thereby precluding summary judgment to Plaintiffs when all inferences are taken in favor of Defendants as the non-movant with respect to that motion,[1] that is not the case with Defendants' cross-motion for summary judgment. To the extent Defendants' cross-motion, which is focused around issues of law, rests on facts in the record, there is no genuine dispute as to those facts. Accordingly, summary judgment should be granted to Defendants as addressed more fully below.

The relief that Plaintiffs seek is plainly not required by the Rehabilitation Act. Defendants do not dispute that the Rehabilitation Act applies to individuals with documented disabilities, and that Defendants must provide reasonable accommodations to individuals with disabilities when they are properly requested. Where the Parties differ is in their understanding of what, precisely, the Rehabilitation Act requires to carry out that mission. The broad statutory mandate, when applied to the practical realities of disabilities (including their variable natures, severities, symptoms, and differing levels of observability to others) and of supervision (which has certain fundamental features that cannot be accommodated out of) is complex and does not lend itself to the one-size-fits all, "solutions" prescribed by Plaintiffs' "expert."

In particular, the Parties diverge in their assessments of Defendants' obligations to identify whether a disability exists within the meaning of the Rehabilitation Act, whether a reasonable accommodation is needed, and, if so, what such reasonable accommodation must look like.

---

[1] Plaintiffs' "reply" to Defendants' responses to Plaintiffs' separate fact statement, in which Plaintiffs attempt to contest those responses, alone defeats Plaintiffs' own proposition that the alleged material facts are undisputed. *See generally* Plaintiffs' Reply in Support of Plaintiffs' Statement of Undisputed Material Facts (ECF No. 81). Such a reply is not required by Local Rule 7(h) or the Court's Standing Order and thus appears intended to circumvent the page limitations for responsive briefs under the Local Rules without leave of Court.

Following Plaintiffs' logic, Defendants have an affirmative obligation to evaluate every supervisee and diagnose whether or not they have a disability; and, if so, apply their "expert's" pre-determined accommodations, all while failing to consider whether the disability affects the supervisee's supervision at all or whether an accommodation would fundamentally alter the nature of supervision such that it would place the larger community at risk. Throughout their briefs, Plaintiffs emphasize their coined phrase "consistently and reliably"—a phrase not included in the Rehabilitation Act—insinuating that nothing less than a guaranteed menu of specific reasonable accommodations applicable to any and every supervisee who self-identifies as suffering from a disability is legally required to satisfy the agencies' obligations under the Rehabilitation Act. This is an overly broad, infeasible reading of the Act.

Setting aside the practical difficulties identified by the agencies in their declarations, the law simply does not support this interpretation of the Rehabilitation Act. First, because the class in this case is limited to individuals "with a disability," ordering Defendants to assess *all* individuals entering supervision for signs of a disability falls beyond the scope of the class. Second, cases interpreting an agency's obligations under the Rehabilitation Act do not support a requirement that the agencies, in addition to all their other duties, must search for disabilities. The Rehabilitation Act is more nuanced than that; although a prerequisite to providing reasonable accommodations is awareness of a disability, such awareness must come either through a disability that is self evident (such as blindness) or through the individual informing the agency of the disability and providing medical support for it. Third, Plaintiffs gloss over the requirement under the Rehabilitation Act that disabilities, other than obvious ones (often manifesting physically observable symptoms), cannot simply be asserted without evidence, and they ignore the fact that "disability" is a term of art with a specific meaning under the Rehabilitation Act. Fourth, even if a

disability is known (either because it is obvious or by notice through documentation), that is not equivalent to a reasonable accommodation being needed, readily identifiable, or available.

Plaintiffs' claims fail as a matter of law, and summary judgment should be granted for Defendants.

## ARGUMENT

### I. <u>Plaintiffs' Rehabilitation Act claim fails because there is no redressable relief available.</u>

#### A. Plaintiffs fail to articulate legally required relief.

Plaintiffs request sweeping relief that would require the Court to order a variety of specific actions by Defendants that the Rehabilitation Act itself does not require. Plaintiffs frame their requested relief as merely asking this Court to act in equity "to enjoin the Government from violating the Rehabilitation Act," Pls.' Opp'n and Reply at 34, ECF No. 79 ("Pls.' Opp'n"), yet their requested relief goes well beyond ordering Defendants not to violate the Act. Plaintiffs actually ask the court to "issue[] prescriptive injunctive relief . . . on a class-wide basis," including "order[ing] Defendants to implement changes, including but not limited to updating their intake processes to assess accommodation needs, establishing mechanisms to record and communicate accommodations, notifying supervisees of their rights under the Rehabilitation Act, and providing employees training on Rehabilitation Act requirements," *id.* at 34-35. Plaintiffs misleadingly frame their requested relief as "similar" to the prescriptive injunctive relief that "this Court . . . already issued." Pls.' Opp'n at 34 (citing ECF No. 32). But this Court ordering Defendants to "assess what reasonable accommodations [the two] named Plaintiffs . . . require to have an equal opportunity to succeed on supervision . . . and provide any and all such required accommodations," ECF No. 32, is *not* akin to all of the relief Plaintiffs request for the class, and is particularly dissimilar to Plaintiffs' request that the Court order Defendants to assess accommodation needs of *all*

individuals on supervision, whether members of the class or not and regardless of whether those individuals have a self-evident or self-reported disability. And requiring Defendants to create mechanisms for recording and communicating accommodations, notifying individuals of rights under the Act, and providing trainings to staff all go well beyond the relief the Court previously ordered for the named Plaintiffs. The Court should decline Plaintiffs' invitation to significantly expand the scope of the available relief beyond its previous order and beyond what the law and equity require.

Plaintiffs point to a Ninth Circuit case, *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), as evidence that a system-wide injunction ordering the Government to adopt specific policies and procedures for addressing and accommodating disabilities can be appropriate. *See* Pls.' Opp'n at 34. But beyond not being binding, *Armstrong* is distinguishable for many reasons, including that the suit was based not only on the Rehabilitation Act but also the American with Disabilities Act ("ADA"), which, unlike the Rehabilitation Act, has implementing regulations that impose granular requirements on policies that covered entities must implement. *See, e.g.*, *Bannister v. United States Parole Comm'n*, Civ. A. No. 18-1397 (APM), 2020 WL 85229, at *3 (D.D.C. Jan. 7, 2020) ("[T]he Rehabilitation Act provision upon which Plaintiff relies[,] [Section 504,] provides only a broad statutory mandate that the Commission must follow."). Thus, the injunction in *Armstrong* was more akin to a "follow the law" injunction, whereas a prescriptive injunction ordering similar relief in this case would go well beyond what the law requires.

Moreover, the injunction Plaintiffs request would improperly "inject[] the judge into day-to-day agency management" and make it "the task of [this] [C]ourt, rather than the agency, to work out compliance with the Rehabilitation Act." *Bannister*, 2020 WL 85229, at *3. That *Bannister* involved an Administrative Procedure Act claim while this case does not is immaterial, because

the point stands that the Rehabilitation Act "creates a broad, mandatory prohibition against discrimination based on disability" and "says nothing of how the Commission must go about ensuring that no qualified individual with a disability is 'excluded from the participation in' or 'denied the benefits of' parole, much less what procedures the Commission must adopt related to considering accommodations in the parole context." *Id.* at *2. And contrary to Plaintiffs' implication, *see* Pls.' Opp'n at 35 n.9, this case is far different from a straightforward discrimination claim directly under the Rehabilitation Act. Plaintiffs do not seek to enforce the plain text of the Rehabilitation Act as to a particular individual. Instead, with the purported aim of preventing hypothetical discrimination in specific cases in the future, they ask this Court to order very specific modes of compliance with the Act's broad mandate that go well beyond what the Act itself requires or what this Court can lawfully require. *See Norton v. Southern Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004) (improper for a plaintiff to "'seek *wholesale* improvement of'" an agency "'program by court decree'" and precluding "broad programmatic attack[s]"). As Defendants have established, this is the exceptional case where *Burford* abstention applies.

Plaintiffs' assertion that *Burford* abstention is a "frivolous" and "throwaway" (Opp'n at 2, 41) argument is misplaced. First, this case presents highly extraordinary circumstances, where the Court is hearing Plaintiffs' claims in equity, but is applying the framework of the Rehabilitation Act, despite determining that Act did not support a private right of action. Further, its review of the agency's actions is guided by the Rehabilitation Act, rather than the traditional framework used where no other standard of review applies—the Administrative Procedure Act ("APA"). Second, CSOSA and the Commission are both tasked with implementing parole and supervised release programs as ordered by the D.C. Superior Court. The agencies are not imposing supervision on

supervisees in the first instance; they are simply tasked with carrying out parole and supervised release. Although not a "state" in the traditional sense, the D.C. Superior Court functions as a state court system, and CSOSA and the USPC act more akin to state agencies than federal, despite being federal funded due to D.C.'s unique statehood situation. *See Klayman v. Lim*, 830 Fed. Appx. 660, 663 (D.C. Cir. 2020) (finding "[f]ederal-court abstention from interference with pending state proceedings (including D.C. proceedings) is appropriate . . . ."). As described at length in Defendants' motion for summary judgment, courts have invoked *Burford* abstention under similar circumstances. *See* Def.'s Mot. at 28-29.

This Court should grant summary judgment to Defendants based on the unavailability of relief of the type sought by Plaintiffs—to order Defendants to adopt particular policies to carry out their obligations under the broad mandate of the Rehabilitation Act.

**B. Plaintiffs' prescribed relief results in an undue burden.**

If the Court is not inclined to grant such relief, it should, at a minimum, grant summary judgment to Defendants regarding liability on the limited point that the requested relief of requiring Defendants to affirmatively assess all supervisees for disabilities is unavailable. The Rehabilitation Act does not require Defendants to go searching for disabilities by affirmatively assessing supervisees for disabilities that are not self-evident or self-reported. Rather, caselaw indicates that a prerequisite for providing a reasonable accommodation is awareness of a disability, which can come either through a disability that is patently obvious or through the individual informing the agency of the disability. Indeed, when the caselaw speaks of requiring the Government to take "affirmative steps," it is in the context of "tak[ing] reasonable affirmative steps to accommodate the handicapped," not taking affirmative steps to identify *which* individuals are disabled. *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014); *see also Andrews v. Mayorkas*, No. CV 18-315 (EGS), 2022 WL 19297053, at *10 (D.D.C. Mar. 28, 2022) ("Because '[f]ew disabilities are

amenable to one-size-fits-all accommodations,' the employing agency, *once aware of the disability and need for accommodation*, should 'initiate an informal, interactive process with the individual with a disability in need of the accommodation' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" (quoting *Ward*, 762 F.3d at 31-32) (emphasis added)). Considering the nature of many disabilities as capable of coming into or out of existence at any point in time and often morphing in feature or severity, an affirmative assessment requirement could create a never-ending assessment obligation, which is why obviousness and self-reporting are better thresholds to initiate obligations under the Rehabilitation Act. Finally, as noted above, requiring assessment of *all* individuals on supervision for disabilities also goes well beyond the class definition and is, therefore, inappropriate and unavailable relief. For these reasons, the Court should grant summary judgment for Defendants on this basis.

### C. Plaintiffs' requested relief does not remedy the alleged violation of the Rehabilitation Act.

Plaintiffs request that the Court order changes to Defendants' systems and justify this request based on their belief that different *outcomes* should have occurred in various example scenarios. What Plaintiffs fail to acknowledge, however, is that implementing systems does not guarantee particular outcomes in individual cases. Indeed, any remedy the Court could provide on a class-wide basis would not result in consistent, across-the-board accommodations or outcomes due to the varied nature of disabilities and individual circumstances. Instead, the nature of disabilities and supervision necessitates that reasonable accommodations be considered on a case-by-case basis.

Plaintiffs argue that Defendants have conceded that *ad hoc* accommodations are legally insufficient by failing to specifically respond to that assertion by Plaintiffs. But this argument fails

for a few reasons. First, the caselaw Plaintiffs cite regarding the legal sufficiency of *ad hoc* accommodations is outside this jurisdiction and not binding on this Court. Second, regardless of the persuasive value the cited cases may have as a general matter, they are inapplicable here, where even the relief Plaintiffs suggest would continue the practice of *ad hoc* accommodations. Put differently, while Plaintiffs request sweeping reforms in how Defendants address disabilities, they cannot and do not request specific accommodations for specific types of disabilities. Thus, even if Plaintiffs ultimately were granted every remedy they desire, accommodations would continue to be considered on an *ad hoc* basis as specific scenarios arise. Finally, it is incorrect that Defendants conceded this issue. Defs.' Cross-Mot. at 11.[2] To the extent any confusion remains, Defendants reiterate that ad hoc accommodations are sufficient.

Thus, Plaintiffs requested remedies do not redress the harms they allege, and this Court should therefore grant summary judgment to Defendants on that basis.

## II. <u>Plaintiffs fail to establish any violation by the Defendants, which entitles the Defendants to summary judgment on liability.</u>

Plaintiffs have failed to establish any violation of the Rehabilitation Act by the Defendants. Accordingly, summary judgment to the Defendants also is warranted on this basis.

### A. Plaintiffs have not properly shown that they are "disabled within the meaning of the Rehabilitation Act."

First, Defendants do not deny that Plaintiffs in this case self-identify as suffering from disabilities and that those disclosures are documented throughout CSOSA's running records (although the timing of when any such notice was made is in dispute). Defendants' contention is

[2] It also is well established that a motion for summary judgment cannot be conceded for want of opposition. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The burden is always on the movant to demonstrate why summary judgment is warranted, and even a nonmoving party's failure to oppose summary judgment does not shift that burden. *Id.*

far more nuanced than Plaintiffs articulate. "'Disability' is a[] term of art under the [Rehabilitation Act] that carries a specific meaning." *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008). In other words, an individual may not simply state that they have a disability and become automatically classified as "disabled within the meaning of the Rehabilitation Act." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008). Rather, "[a]n individual is disabled under the Rehabilitation Act only if she can show that she (1) 'has a physical or mental impairment which substantially limits one or more ... major life activities,' (2) 'has a record of such an impairment,' or (3) 'is regarded as having such an impairment.'" *Adams*, 531 F.3d at 943 (quoting 29 U.S.C. § 705(20)(B)). Due to this specialized definition, "[n]ot all individuals having what might commonly be perceived as physical or mental disabilities are protected by the Act." *Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008). Admissible evidence is required to prove that the Plaintiffs were disabled within the legal definition of that term when they made their self-disclosures.

Plaintiffs argue that "the entire class by definition . . . ha[s] disabilities." Pls.' Opp'n at 4. But either the class definition impliedly incorporates the elements of "disability" as defined by the Rehabilitation Act (in which case Plaintiffs have failed to establish that all of their example supervisees are properly members of the class), or the class definition does *not* incorporate those elements (in which case Plaintiffs have failed to establish that the class qualifies under the Rehabilitation Act). Either way, the elements of "disability" in the Rehabilitation Act must govern this case.

Plaintiffs have failed to sufficiently establish that the elements of a disability under the Rehabilitation Act as to their example supervisees. Plaintiffs argue that "Defendants' own records corroborate th[e] disabilities" of Davis and the example supervisees, in part because CSOSA or the Commission, or both, had identified those individuals as having disabilities. But Defendants'

recognition that an individual has self-reported a disability is not synonymous with that individual having a "disability" as a term of art under the Rehabilitation Act let alone one that was supported at the time by medical documentation. In other words, recognizing and documenting that an individual has asserted a disability is far from making a finding that an individual actually has, has a record of having, or is regarded to have that condition *and* that the condition "substantially limits . . . [a] major life activity." *Adams*, 531 F.3d at 943 (quoting 29 U.S.C. § 705(20)(B)). Plaintiffs fail to allege that every one of their example supervisees has a condition that substantially limits a major life activity. And Plaintiffs make no representations as to how many of the other supervisees who may have been identified by one or both Defendants as asserting disabilities have conditions that create substantial limitations to major life activities. In other words, the record does not come close to establishing a sizeable number of individuals who have qualifying disabilities under the Rehabilitation Act.

As for what kind of documentation of a disability is required under the Rehabilitation Act, Plaintiffs offer a hollow response that medical records are not "*always* necessary to establish disability" because "[m]any disabilities are obvious or can be proved by other evidence." Pls.' Opp'n at 6 (citation omitted) (emphasis added). Defendants agree that some disabilities are sufficiently obvious so as not to require specific medical documentation. But they maintain that merely self-reporting a mental, physical, or intellectual condition is not sufficient to establish the existence of that condition. *See, e.g.*, *Ward*, 762 F.3d at 31-32 (holding, in the employment context, that "[t]o meet its obligations under the [Rehabilitation] Act, . . . an employer needs information about the nature of the individual's disability and the desired accommodation—information typically possessed only by the individual or her physician" and that, while "[a]n individual seeking accommodation need not provide medical evidence of her condition in every case[,]"

"when the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation") (cleaned up). Summary judgment should be granted to Defendants on this basis.

### B. Plaintiffs have not shown that they were "excluded from, denied the benefit of, or subject to discrimination under a program or activity" solely on the basis of a disability.

This Court previously found in the context of Plaintiffs' preliminary injunction motion that because the named Plaintiffs had "shown that they face obstacles, solely because of their disabilities, that impede their access to a government benefit or program," "the Government injured them by requiring them to navigate supervision without offering reasonable accommodations." ECF No. 31 at 11 (citations omitted). That injury of "obstacles to equal access," the Court reasoned, "existed 'solely by reason' of the[] [named Plaintiffs'] disabilities." *Id.* Plaintiffs rely heavily on the proceedings during the preliminary injunction stage of this case to justify their request that the Court move for summary judgment in their favor, *see* Plf.s' Opp'n at 1, 8, 34, going as far as to state that this Court should treat as conceded any element not contested during the preliminary injunction proceedings. This is plainly contrary to law.. *University of Texas v. Camensich*, 451 U.S. 390, 395 (1981) ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). This Court cannot simply infer that Defendants conceded an element on the merits based on those earlier proceedings. *See Berrigan v. Sigler*, 499 F.2d 514, 518 (DC Cir. 1974) ("The decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings and does not limit or preclude the parties from litigating the merits. . . .").

Moreover, there are certain necessary facts that must be in place to turn a disability that poses an obstacle to success on supervision into an injury under the Rehabilitation Act. An individual's Rehabilitation Act injury cannot accrue in a vacuum absent any interaction with the supervising agencies. For example, if a supervisee develops a physical disability due to an accident during the course of his supervision, it cannot be that an injury under the Rehabilitation Act occurs at the moment of the accident. Instead, the Rehabilitation Act's language and the subsequent caselaw make clear that a notice component is critical. What form notice takes will vary from case to case, and the variety of potential combinations of circumstances highlights the imprudence of the court-ordered programmatic changes that Plaintiffs seek.

And, contrary to Plaintiffs' suggestion, the law does not require Defendants to "[a]ffirmatively [a]ccommodate [s]upervisees [e]ven [w]ithout [r]equests [f]or [s]pecific [a]ccommodations," Pls.' Opp'n at 19.[3] While Defendants acknowledge as a general matter that some disabilities are obvious and the need for them to be accommodated is apparent from the medical condition itself, *see* Defs.' Cross-Mot. at 6; Vela Decl. ¶ 16 (ECF No. 74-4); Forsha Decl. ¶ 5 (ECF No. 74-3), even for that category of disability, the provision of an accommodation is intended to be a collaborative process, in which the disabled individual works with the agency to arrive at a reasonable and useful accommodation, if possible. *See, e.g.*, *Ward*, 762 F.3d at 34 (holding that "[n]o reasonable juror could have found that [Ward's employer] denied Ward's request for an accommodation, . . . because Ward abandoned the interactive process before [her

---

[3] Plaintiffs make the argument that it is "impracticable" to require supervisees to request accommodations because Defendants lack a clear process through which supervisees may do so. Although Defendants do not agree that the record supports this position, the Defendants are—as their declarations make clear—actively working on reforms to make the process of requesting a reasonable accommodation more clear. Vela Decl. ¶ 29; Forsha Decl. ¶ 6. But such efforts cannot be relied upon as a basis to infer liability. *See* Fed. R. Evid. 407.

employer] had the information it needed to determine the appropriate accommodation"). Affirmative provision of accommodations absent this interactive process involves unhelpful, and potentially harmful, guesswork. *See Pierce*, 128 F. Supp. 3d at 271.

But many disabilities do not by their nature indicate the type of accommodation that might be warranted, and Plaintiffs' argument wrongly assumes that every condition is a disability within the meaning of the Rehabilitation Act, that every disability warrants accommodation, and that a reasonable accommodation exists for every disability. As the record makes clear, however, supervisees often self-report conditions but make no claim that those conditions have posed an obstacle to their success on supervision.[4] *See infra* p. 19-20 (discussion of Supervisee 9). And in other instances, a supervisee may raise a medical condition as posing a barrier to success on supervision, [redacted] but fail to establish that the condition constitutes a disability or explain how that disability (if it is one) could be reasonably accommodated without fundamentally altering the nature of supervision.

Plaintiffs cite three cases to support their argument that "the Rehabilitation Act imposes an obligation to assess accommodation needs"—*Sacchetti*, *Armstrong*, and *Pierce*. Each is distinguishable or does not support this proposition. As Plaintiffs acknowledge, *Sacchetti* involved an ADA claim. *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 272 (D.D.C. 2018). And although *Sacchetti* speaks in terms of an affirmative duty to assess for whether any accommodations are needed once an agency is aware of a disability, the caselaw on which

[4] Plaintiffs open their opposition by stating that "this case turns on the answer to one simple question: whether federal agencies that supervise people with disabilities fail to provide accommodations so those individuals have an equal opportunity to succeed on supervision." Pl.'s Opp'n at 1. However, Plaintiffs also insist that success on supervision is irrelevant to the Court's inquiry, and characterize success or failure on supervision as a "downstream failure." Plaintiffs are incorrect in asserting that the nature of supervision is irrelevant to considering whether an accommodation is reasonable.

*Sacchetti* relies speaks in terms of *knowledge of the need for accommodations* prior to there being a duty to assess. *See, e.g., Updike v. Multnomah Cnty.*, 870 F.3d 939, 954 (9th Cir. 2017) (discussing in the section on the obligation to gather "sufficient information" the need for being "on notice that an accommodation is required" in order for an entity to incur liability under the deliberate indifference test)*; see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) ("We have observed that 'mere speculation that *a suggested accommodation* is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary....'" (emphasis added) (citation omitted)). *Armstrong* upheld an injunction requiring provision of accommodations, mainly under the ADA, but did not specifically hold that affirmative assessment of a need for accommodation is required under the Rehabilitation Act. *See Armstrong*, 275 F.3d 849.

Finally, contrary to Plaintiffs' suggestion, Pls.' Opp'n at 19-20, *Pierce* does not require affirmative provision of accommodations without a request across-the-board. Rather, *Pierce* found that a specific request for an accommodation is not required for "an obviously disabled" individual with a "known," "communications-related disability." *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269-70 (D.D.C. 2015). The court also stated that it believed there was "an affirmative duty [for a prison to] to assess the potential accommodation needs of inmates with known disabilities" regardless of whether those inmates made a specific request for accommodation. *Id.* at 272.

But even in so holding, the court recognized that requests for accommodation "perform[] a signaling function—*i.e.*, . . . alert[ing] the public entity to the disabled person's need for an accommodation," which is unnecessary where the disabled person's "disability is obvious and

indisputably known to the provider of services." *Id.* at 270. In other words, some disabilities (such as Pierce's hearing disability) are, by nature, obvious as to their existence *and* as to the need for some reasonable accommodation to be provided, whereas other disabilities may be known or obvious but do not, by their nature, "alert[] the public entity to the disabled person's need for an accommodation," *id. See, e.g.*, *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1197–98 (10th Cir. 2007) ("[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation."); *Duvall,* 260 F.3d at 1139 ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required....").

Ultimately, the relevant law is that of this Circuit, which recognizes, consistent with Defendants' position, that "[f]ew disabilities are amenable to one-size-fits-all accommodations" and that "[t]o meet its obligations under the Act, . . . an employer needs information about the nature of the individual's disability and the desired accommodation—information typically possessed only by the individual or her physician." *Ward*, 762 F.3d at 31; *see also Andrews v. Mayorkas*, No. CV 18-315 (EGS), 2022 WL 19297053, at *10 (D.D.C. Mar. 28, 2022) ("Because '[f]ew disabilities are amenable to one-size-fits-all accommodations,' the employing agency, *once aware of the disability and need for accommodation*, should 'initiate an informal, interactive process with the individual with a disability in need of the accommodation' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" (quoting *Ward*, 762 F.3d at 31-32) (emphasis added)).

While Plaintiffs assert that one or both Defendants knew about the condition of Davis and other supervisees, they fail to establish that in all or even in many instances, the known conditions were alone indicative of a "disability" within the meaning of the Rehabilitation Act or of a nature that signaled an obvious need for accommodation in connection with the supervision process. To the contrary, in many cases, the conditions (to the extent they even qualify as disabilities) did not require reasonable accommodation by Defendants. For example, Plaintiffs' discussion of the facts in Davis's case highlights the breakdown of their abstract arguments when met with the practical realities of whether a condition constitutes a "disability" warranting an accommodation in the supervision process. Plaintiffs argue that CSOSA and the Commission were on notice of Davis's [redacted]" and imply that he should have been [redacted], Pls.' Opp'n at 21, despite the fact [redacted], Defs.' Cross-Mot. at 13-14. Plaintiffs do not dispute that [redacted].[5]

Likewise, Plaintiffs misleadingly state that "[redacted]," Pls.' Opp'n at 21, [redacted]

[5] And while Plaintiffs argue that Defendants may not rely upon the audio recording of Mr. Davis's October 2023 revocation hearing because it is not in evidence, Defendants rely not on the recording but on the sworn declaration of an individual who listened to that audio recording, Vela Decl. ¶ 22, just as Plaintiffs rely on sworn declarations from several individuals in their filings. Moreover, the audio recording is not part of the record because it was not responsive to Plaintiffs' discovery requests. Defendants are prepared to submit that recording as part of the summary judgment record should the Court request.

[redacted]utes. *See* Decl. of Oscar Vela ¶ 22, ECF No. 74-4 ("Vela Decl."). This Court should not require Defendants to dig beneath the testimony of a supervisee regarding the barriers he faces and reasons for his behavior to seek out an alternate, disability-based rationale that contradicts the evidence in the case.

As to the "solely by reason of . . . disability" prong, this Court determined at the preliminary injunction stage that the injury of "obstacles to equal access . . . exists 'solely by reason' of [the named Plaintiffs'] disabilities." ECF No. 31 at 11. But respectfully, that begs the question of equal access to what? The Government "program or activity" being offered is supervision, either on parole or supervised release, but the two Defendants oversee markedly different aspects of that program. Therefore, CSOSA's ability to address obstacles to equal access to supervision occurs at a different stage and involves different options than the Commission's ability to address such obstacles.

For example, the obstacle to success on supervision that the Court identified for Mr. Mathis was his "[redacted]," which, according to the Complaint, "[redacted]." *Id.* Options potentially available to CSOSA to accommodate such a condition would be modifying the frequency or timing of CSO check-ins, whereas the Commission has no role in modifying this day-to-day aspect of supervision. *See* Vela Dep. 137:22-139:2; 157:15-158:15. [redacted]." *Id.* But it is hard to identify a potentially available option to reasonably accommodate such a condition without fundamentally altering the nature of supervision, which at its essence requires communication with the supervising officer. Moreover,

any such accommodation (were a reasonable one available) would be provided by the CSO and would not involve the Commission.

The Commission, in contrast, oversees the portion of supervision that sets initial, broad conditions of supervision and the portion that adjudicates alleged violations submitted by CSOSA. The Commission's only opportunity to reasonably accommodate a disability, therefore, occurs at the stage of setting or revising the broad conditions of supervision or at the stage of assessing an alleged violation and its potential consequences. *See* Vela Decl. ¶¶ 5, 11-12. Thus, while revocation of supervision is an alleged "downstream harm" to an alleged injury caused during the day-to-day aspect of supervision overseen by CSOSA, it is often the core moment of inquiry as to whether there has been any injury by the Commission.[6]

**C. Plaintiffs' allegations regarding the Commission fail as a matter of law.**

Even were the Court finds that a factual dispute precludes summary judgment in favor of CSOSA on issue of liability addressed in Sections II.A and B above, summary judgment still should be granted to the Commission on the issue of liability. Isolating Plaintiffs' allegations specific to the Commission, Plaintiffs have failed to establish the element of a reasonable accommodation claim. Among other things, Plaintiffs plead no facts, and point to no examples, of supervisees requesting a reasonable accommodation from the Commission. Put differently, Plaintiffs allege zero instances in which the Commission denied a properly supported request for a reasonable accommodation. *See Ward*, 762 F.3d at 31 ("To prevail on her claim that the BVA failed to accommodate her disability, Ward must produce sufficient evidence that . . . the BVA denied her request for a reasonable accommodation.")

---

6 Plaintiffs seem to recognize this fact in that they repeatedly mention the revocation process in describing the factual scenarios of Mr. Davis and some of their example supervisees. *See* Pls.' MSJ Br. at 15-16, 18-19; Pls.' Opp'n at 19.

Of Plaintiffs' ten supervisee examples, six do not mention the Commission whatsoever.[7] Of the four examples that mention the Commission, two involve the Commission reinstating the supervisee to supervision rather than revoking them. *See* Pls.' MSJ at 16, 19. Plaintiffs note that the reinstatements occurred "without modifying conditions to accommodate [the supervisees'] disability-related barriers," Pls.' MSJ at 16, but fail to acknowledge the undisputed fact that the Commission lacks the authority to modify CSOSA-imposed supervision requirements, *see* Vela Dep. 137:22-139:2; 157:15-158:15. Thus, Plaintiffs allege no Rehabilitation Act violation by the Commission as to those individuals.

[redacted]. In other words, the revocations were not "solely" based on disabilities and, therefore, fall outside the scope of the Rehabilitation Act. [redacted]. *See* Defs.' Statement of Material Undisputed Facts ¶¶ 22-24, ECF No. 74-1 ("Defs.' SUMF"). [redacted]. *See* Defs.' Cross-Mot. at 13 n.5; Defs.' SUMF ¶ 23. [redacted]. Pls.' Response to Defs.' SUMF ¶ 24, ECF No. 82 ("Pls.' SUMF

[7] As for the unnamed "[o]ther [s]upervisees" Plaintiffs mention, Pls.' MSJ at 19, the Court should not treat those allegations as competent evidence because Defendants have no means of verifying the information presented and identifying other pertinent facts for each case.

Response"). In the absence of such documentation, the Commission was not required to accommodate the alleged disability by, for example, releasing and reinstating Supervisee 2 to supervision, particularly where, as here, there were multiple alleged violations. *See* Defs.' SUMF ¶ 21.

[redacted]. *See* Defs.' SUMF ¶¶ 55-59. [redacted] SUMF Response ¶¶ 56-57. [redacted]. *See id.* [redacted]. 29 U.S.C. § 705(20)(C)(i) (expressly excluding from coverage under the Rehabilitation Act individuals "currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use"). [redacted]

[redacted]. Just as this Court would not be in error for revoking a federal supervised releasee on the basis of the record before it, it cannot be that the Commission is liable under the Rehabilitation Act for revoking an individual's supervision on the basis of the record before it, including a supervisee's admitted rationale for the violation that is disconnected from any alleged disability.

[redacted], *see* Pls.' Opp'n at 21, [redacted]burns. *See* Pls.' Response to Defs.' SUMF ¶ 80. In other words, when presented with a supervision violation that appeared to be caused by a disability, the Commission reasonably accommodated that disability by finding no probable cause and reinstating Davis to supervision.

Plaintiffs' allegations, therefore, are insufficient to establish any Rehabilitation Act violation by the Commission and the Court should therefore grant summary judgment to the Commission on liability for that additional reason.

**D. To the extent that Plaintiffs seek affirmative identification of non-obvious disabilities by Defendants, such relief would be unduly burdensome to Defendants.**

Plaintiffs misunderstand Defendants' argument when they complain that Defendants cannot simultaneously argue both that they have already undertaken sweeping reforms in response to Plaintiffs' concerns and that being ordered to comply with Plaintiffs' wishes would be unduly

burdensome. As an initial matter, Plaintiffs' argument is precluded by Federal Rule of Evidence 407, which renders subsequent remedial measures inadmissible to establish liability.

Further, Defendants' argument is more narrow than characterized by the Plaintiffs. Defendants make the narrow point that requiring "affirmative[] identif[ication] [of] disabilities amongst the supervisee population would be an undue burden." Defs.' Br. at 19. As Defendants have already argued above and in their cross-motion, affirmative identification of non-obvious disabilities is not legally required and goes beyond the scope of the class. But beyond the lack of a legal requirement and the fact that the requested relief goes beyond the class, it would also be highly taxing on Defendants' resources to be required to seek out and assess potential disabilities for individuals who do not present with any obvious condition that might constitute a disability that could impact the parole supervision process and who do not self-report any such condition. As explained previously, Defendants have made changes that will facilitate the collection of self-reported information from supervisees of any disabilities, including prompting the supervisee to disclose any such information during the intake process with CSOSA and during any hearings before the Commission. Vela Decl. ¶ 27; Forsha Decl. ¶¶ 5-6. But to require Defendants to undertake assessments of whether any unreported condition exists that might constitute a disability would be a bridge too far that would extend well beyond Defendants' available resources and expertise. *See Alexander v. Choate*, 469 U.S. 287, 299 (1985) ("Any interpretation of § 504 must . . . be responsive to two powerful but countervailing considerations—the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds.").

## III. The Testimony of Plaintiffs' Expert Should be Excluded or Afforded Little Weight, and the Court Should Consider Defendants' Declarations.

Plaintiffs argue that this Court should not consider the agency declarations because they allege that they are inconsistent with prior sworn statements, were submitted after the close of fact

discovery, and concern future policy measures to be implemented by the agencies. Pls.' Opp'n at 26. First, it should be beyond question that this Court routinely considers declarations and affidavits submitted with motions for summary judgment at all stages of proceedings. *Bolden v. Clinton*, 847 F. Supp. 2d 28, 34 (2012) ("The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he. . . provides 'direct testimonial evidence.'") (citing to *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006)); *see also Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). Rule 56(c)(4) expressly recognizes that an affidavit or declaration "can be used to support or oppose a motion" for summary judgment. "An affidavit or declaration . . . is permissible summary judgment evidence not because the affidavit or declaration is itself admissible trial evidence but because it is a statement made under penalty of perjury that provides a substitute for live testimony and can, thus, 'be[] converted into admissible evidence.'" *Fleck v. VA Office of Inspector General*, 651 F. Supp. 3d 46, 54 (D.D.C. 2023). "Nor does Rule 56 require that an otherwise admissible affidavit be corroborated by independent evidence." *Stein*, 881 F.3d at 858; *see also Danzer v. Norden Sys., Inc*, 151 F.3d 50, 57 (2d Cir. 1998) ("rejecting the argument that a self-serving affidavit is insufficient to defeat summary judgment because it would "thrust the courts—at an inappropriate stage—into an adjudication of the merits.").

Further, contrary to Plaintiffs' contention, Pls.' Opp'n at 32, there is no contradiction between Mr. Vela's deposition testimony in December 2025 and his statement in his later declaration that, on March 20, 2025, the Commission "implemented trainings to educate hearing examiners on identification of and reasonably accommodating [] disabilities under the Rehabilitation Act." Vela Decl. ¶ 28. In his deposition testimony, he merely noted topics that the Commission does not provide training on, which include "how to assess if a person has

disabilities," "how to determine what disability accommodations are appropriate," and "how to provide disability accommodations." Pls.' Ex. 4 (Vela Dep.) at 100:19-103:7.

Regarding Plaintiffs' expert, Kelly Mitchell, Plaintiffs' own summary of that testimony confirms that the "testimony" consists purely of bald legal assertions. Plaintiffs quote Mitchell stating that the agency Defendants "lack the foundational infrastructure necessary to provide reasonable accommodations in a systematic and consistent manner." Pls.' Opp'n at 31. "Experts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430 (7th Cir. 2020). Where one of the central legal issues in this case is whether the agencies have complied with their obligations pursuant to the Rehabilitation Act, which requires the provision of reasonable accommodations—again, a *legal* term—this is plainly a legal conclusion thinly veiled as a statement of fact. *See United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (an expert may not "give testimony that 'states a legal standard or draws a legal conclusion by applying law to the facts."). Some Courts have found it reversible error to admit an expert whose testimony "drew directly upon the language of the statute. *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir.), *on reh'g*, 856 F.2d 5 (2d Cir. 1988). Plaintiffs' remedy arguments rise and fall on the testimony of their expert, and without her broad prescriptions for how the agencies must conduct supervision, their case crumbles into sweeping generalizations about policies to which they do not have the day-to-day responsibility of implementing or the experience required to understand the underpinnings of. In contrast, Defendants have put forward for this Court's consideration, the agency's expertise on these matters, captured in the Vela and Forsha Declarations, to which this Court should give considerable weight over the speculative, unfounded legal conclusions of an out-of-state consultant paid for her conclusions regarding compliance with the Rehabilitation Act.

Lastly, Plaintiffs are incorrect that Defendants' concerns raised regarding its experts purely go to the weight of the testimony. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Defendants' assertions that Plaintiffs' expert's testimony consists wholly of unsupported legal conclusions go directly to the admissibility of that testimony.

**CONCLUSION**

Because Plaintiffs have failed to establish that any violations of the Rehabilitation Act occurred, particularly on a class-wide basis, or that their requested relief could remedy such violations even if they had occurred, Defendants' cross-motion for summary judgment should be granted. For the same reason, and also because genuine disputes of material fact underlie Plaintiff's Partial Motion for Summary Judgment, that motion should be denied.

Dated: July 15, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Tara Derbisz*
TARA DERBISZ
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Phone: (202) 809-0784
tara.derbisz@usdoj.gov

*Attorneys for the United States of America*